NANCY HOLMAN GRADOVILLE, APPELLANT, V.
BOARD OF EQUALIZATION OF CASS COUNTY, NEBRASKA,
APPELLEE.

301 N.W.2d 62

Filed January 9, 1981. No. 43030.

Cassem, Tierney, Adams, Gotch & Douglas for appellant.

Ronald D. Moravec, Cass County Attorney, for appellee.

Heard before KRIVOSHA, C.J., McCOWN, BRODKEY, and HASTINGS, JJ., and STUART, District Judge.

KRIVOSHA, C.J.

The appellant, Nancy Holman Gradoville (Gradoville), appeals from two judgments entered by the District Court for Cass County, Nebraska, which essentially affirmed the action of the Board of Equalization of Cass County, Nebraska, in assessing certain property owned by Gradoville in Cass County for the year 1979. We have now reviewed all the evidence presented in this case and have concluded that the

judgments entered by the trial court must be reversed.

Two separate actions were originally filed by Gradoville in the District Court for Cass County, Nebraska. The first action involved the 1979 valuation of certain real estate owned by Gradoville in Cass County, being described as Lot 3 and Sublot 1 of Tax Lot 21 in the east half of the northwest quarter of Section 35, Township 13, Range 13 East of the 6th P.M., Cass County, Nebraska. The property contains some 34.30 acres and has a home constructed on it. The property will hereafter be referred to as the "34 acres." The Board of Equalization assessed the value of the land for 1979 at $32,650 and the improvements for 1979 in the amount of $38,460. The District Court affirmed the action of the Board of Equalization.

The second action involved the 1979 valuation of a second tract of land owned by Gradoville in Cass County, being described generally as the north part of the northeast quarter of the southwest quarter of Section 35, Township 13, Range 13 East of the 6th P.M., Cass County, Nebraska, containing approximately 12.66 acres. That property will hereafter be referred to as the "12-acre tract." The 12-acre tract was leased to the Missouri Valley Dredging Company and was assessed for the year 1979 by the Board of Equalization in the amount of $12,225. The trial court, for reasons not fully clear from the record, concluded that a certain isolated trailer belonging to Missouri Valley Dredging Company and located upon the 12-acre tract was not, in fact, being used by Missouri Valley and that, therefore, the valuation of the 12-acre tract should be reduced by $2,000, thereby valuing the 12-acre tract for 1979 in the amount of $10,225. Both appeals from the Board of Equalization had been consolidated for trial before the District Court and by stipulation consolidated for hearing before this court. We shall, therefore, consider them together.

Appellant first argues that the evidence clearly establishes that the action of the Board of Equalization

in assessing the two tracts for the year 1979 was arbitrary and capricious. Appellant raises two other errors. However, in view of the action taken by us in the instant case, we need only consider the appellant's first claim.

Before proceeding to review the evidence, such as it is in the record, it may be helpful to set out the legal principles by which this appeal must be considered. It has frequently been held by this court that the trial of an appeal from a county board of equalization involving the valuation of real estate, both in the District Court and the Supreme Court, is de novo as an equitable proceeding. *Leech, Inc. v. Board of Equalization*, 176 Neb. 841, 127 N.W.2d 917 (1964); *Matzke v. Board of Equalization*, 167 Neb. 875, 95 N.W.2d 61 (1959); *Adams v. Board of Equalization*, 168 Neb. 286, 95 N.W.2d 627 (1959).

Even though the appeal is de novo, there are certain statutory requirements which this court must follow in reviewing such matters. Neb. Rev. Stat. § 77-201 (Reissue 1976) requires that all real property subject to taxation "shall be valued at its actual value . . . and shall be assessed at thirty-five per cent of such actual value." Likewise, Neb. Rev. Stat. § 77-112 (Reissue 1976) provides: "Actual value of property for taxation shall mean and include the value of property for taxation that is ascertained by using the following formula where applicable: (1) Earning capacity of the property; (2) relative location; (3) desirability and functional use; (4) reproduction cost less depreciation; (5) comparison with other properties of known or recognized value; (6) market value in the ordinary course of trade; and (7) existing zoning of the property."

The items set out by statute as examples of actual value, however, are not exclusive to all others. As we noted in *County of Gage v. State Board of Equalization & Assessment*, 185 Neb. 749, 751, 178 N.W.2d 759, 761-62 (1970): "The Legislature has attempted to define 'actual value' for purposes of taxation by application

of a formula 'when applicable.' [Citation omitted.] While the items of the formula are all related to value, those which are factors in determining value are by no means the only factors which enter into the valuation of property for taxation. As this court said in Richards v. Board of Equalization, 178 Neb. 537, 134 N.W.2d 56: 'For purposes of taxation, the terms actual value, market value, and fair market value mean exactly the same thing. Many elements enter into a determination of actual value, some of which are set out in the statute.'"

And, likewise, in *Newman v. County of Dawson*, 167 Neb. 666, 672-73, 94 N.W.2d 47, 50-51 (1959), we said, in part: "It has been frequently recognized by this court that absolute or perfect equality and uniformity in taxation cannot be attained. Something more than a difference of opinion must be shown. It must be demonstrated by evidence that the assessment is grossly excessive and is a result of arbitrary or unlawful action, and not a mere error of judgment. . . . The law imposes the duty of valuing and equalizing of property for taxation purposes upon the county assessor and the county board of equalization. In reviewing the actions of tribunals created by law for ascertaining the valuation and equalization of property for taxation purposes, courts will not usurp the functions of such tribunals. It is only where such assessed valuations are not in accordance with law, or it is made to appear that they were made arbitrarily or capriciously, that courts will interfere. The valuation of property is largely a matter of judgment, but mere differences of opinion, honestly entertained, though erroneous, will not warrant the interference of the courts. If uniformity of opinion were required, no assessment could ever be sustained."

The county urges us to keep in mind that there is a presumption that a board of equalization has faithfully performed its official duties, and that in making an assessment of Gradoville's property it acted upon

sufficient competent evidence to justify its action and such presumption remains until there is competent evidence to the contrary. See, *Chudomelka v. Board of Equalization*, 187 Neb. 542, 192 N.W.2d 403 (1971); *Clearwater Corp. v. City of Lincoln*, 202 Neb. 796, 277 N.W.2d 236 (1979); *Hastings Building Co. v. Board of Equalization*, 190 Neb. 63, 206 N.W.2d 338 (1973). While such statement does, indeed, correctly recite the law, there is a further corollary to that proposition. We have frequently said, "The presumption obtains only while there is an absence of competent evidence to the contrary. It disappears when there is competent evidence on appeal to the contrary, and from that point on the reasonableness of the valuation fixed by the board of equalization becomes one of fact based upon evidence, unaided by presumption, with the burden of showing such value to be unreasonable resting upon the appellant on appeal from the action of the board." *Weller v. Valley County*, 141 Neb. 69, 73, 2 N.W.2d 606, 608-09 (1942); *Leech, Inc. v. Board of Equalization, supra.*

We believe that the record in this case does, indeed, rebut the presumption urged by the county and, in fact, establishes that its action in arriving at the valuation of the property for the year 1979 is not supported by evidence as required by law. It must, therefore, be considered to have been made arbitrarily and capriciously. We turn now to the record for an examination of the facts.

The 34 acres are located near but not adjacent to the Platte River. The record does not indicate the distance from the Platte River. An exhibit offered in evidence, however, indicates that the 34 acres are located somewhere between a quarter of a mile to as much as a mile from the Platte River itself. The 12-acre tract lies immediately south of the 34 acres and is even farther from the Platte River than the 34 acres.

Located upon the 34 acres is the Gradoville home, constructed and completed in 1975. The house con-

sists of seven rooms with attached garage. The outside of the house is constructed of metal siding and was classified by the assessor as a type "C" quality of construction, meaning that it was only fair construction. The land upon which the house is located is zoned "agricultural" and is in the flood plain, so that if the home is destroyed it cannot be replaced.

Gradoville testified that the house leaked when the river flooded and that she had problems with the plumbing in the house. Likewise, she testified that the well had water but that the water was rusty. She further testified that the surrounding land owned by Gradoville is occupied by snakes, turtles, mosquitoes, and rats. There was no testimony to the contrary offered by the county.

The land itself was, at one time, used for the excavation of waste sand by the State of Nebraska. The removal of the waste sand left a borrow pit about 4 feet deep covering most of the west side of the 34 acres. There was, likewise, formerly located on the 34 acres a lake which was at one time rented out for fishing but which, in 1977, was destroyed when the Platte River came through, filling it in. It is now nothing more than a swamp and has not been used as a lake since 1977 because it is not deep enough to support fish life. Ten mobile trailers are also located on the 34 acres. These mobile homes belong to other individuals who lease the ground from Gradoville. Gradoville receives a total of approximately $4,000 a year rental for the space upon which the 10 trailers are located. The record is devoid of any evidence as to who the owners of the trailers are, how the trailers are used, or whether the tenants occupy the trailers on a full-time or part-time basis. The record leaves one with the impression that both the house and the 34 acres are substandard and not particularly desirable as a suburban dwelling site.

The 12-acre tract of land located immediately south of the 34 acres of land has, for a number of years, been

leased to Missouri Valley Dredging Company. There is a fence surrounding approximately 7 acres of the tract and the rest of the land is outside the fence. The land is all waste sand left after the sand was pumped out. There is nothing on the 12-acre tract but the property of the dredging company. It was described as mostly "a junkyard."

The county employed Mr. Boyd Roberts, an experienced appraiser, to assess both the 34 acres and the 12-acre tract. This was done sometime between 1975 and 1977.

Roberts assessed the value of the improvements for 1979 on the 34 acres at $38,460. This consisted of the Gradoville home which he assessed at $37,040, plus a fishing stand and concession stand, which he last saw in 1975, in the amount of $1,420. Gradoville testified that both the fishing stand and the concession stand were no longer there, one having been removed by order of the county and the other having been destroyed by the flood. Roberts conceded that he had not been on the property since the events which Gradoville maintained occurred and, therefore, did not know what had happened. Nevertheless, he assessed both improvements for 1979.

Insofar as the value of the house is concerned, Roberts testified that he saw it once briefly in 1975 when he examined a few of the rooms and then measured the outside dimensions. He arrived at his value by multiplying the outside square feet times a factor which was contained in a formula used throughout the county to determine reconstruction value of improvements. He thought he saw the property a second time, but the record was unclear as to when or under what conditions. He conceded that he did not take into account the fact that the property was in a flood plain area or that it had a number of defects, though he did recognize that it was a class C construction as opposed to an A or B. He arrived at a figure of $32,650 for the value of the 34 acres through a series of mathematical computations which he made.

With regard to the value of the land in the 34 acres, he determined that some of the land upon which the trailers were located were 1 acre in size while others were only a half an acre. There is no evidence to indicate that they were leased in that manner or in any way divided up into tracts. Nevertheless, by reason of some observation he made, he concluded that there were three 1-acre lots which should be valued at $2,500 per acre. This apparently was based upon some notion that other comparable "recreational land" in the county had a value of $1,000 per acre. To the base of $1,000, he added what he perceived as the value of improvements to the leased land and arrived at a final figure of $2,500 per acre. He, likewise, concluded that there were five half-acre lots which should be valued at $1,250 per lot, determined in the same manner as the 1-acre tracts. On that basis, he determined that the 5½ acres devoted to the trailer courts had a value of $13,750. He, likewise, determined that the value of the land upon which the home was located was in the amount of $6,500. When asked as to how he arrived at that figure, he testified that the first acre of all suburban land in the county is assessed at $6,500 per acre and the balance of the land at $500 per acre. On that basis, he concluded that there was 1 acre valued at $6,500 and the remaining 24.8 acres at $500 an acre for a total of $12,400. Agricultural land which is unproductive is valued in the county at only $20 per acre. There is no evidence in the record to indicate how or in what manner any of this property should be assessed as either "recreational property" or "suburban." It is zoned agricultural and, while it is located near the Platte River, there is no indication that it is used in any manner as recreational land nor could be used in any manner for recreational purposes. There is simply no evidence to indicate how or in what manner the eight trailers located upon the property are put to use and whether anyone uses them for recreational purposes. The old pay lake which was

seen by Roberts in 1975 no longer exists. In summary, there is no evidence in the record that the 34 acres are, in any manner, properly classified as recreational or suburban. It would appear from the evidence that such classification is arbitrary.

Roberts never testified that, in his opinion, the actual value of the improvements was in the amount of $38,460 or that the 34 acres was in the amount of $32,650. He simply testified that he used a formula created for appraising property throughout the county in arriving at a number. To be sure, it appears that the method by which the Gradoville property was appraised was consistent with the manner in which other property in the county was appraised. The difficulty, however, is that there is no evidence in the record that the classification was correct or that the manner of appraisal resulted in obtaining the actual value of the property as required by law. The assumptions and conclusions made by the county cannot, in any manner, be supported in this record. To suggest that the first acre of all land outside of an incorporated city in the county, regardless of its location, size, or condition, should be valued at $6,500 indicates arbitrary action. Likewise, to suggest that the remaining land, zoned agricultural in the flood plain and from the evidence not suitable for any use because of its condition, should be identified as recreational land and assessed at $500 an acre instead of unusable agricultural land valued at $20 per acre appears to be arbitrary. While it is true and we have so held that absolute or perfect equality and uniformity in taxation cannot be obtained, see *Newman v. County of Dawson, supra,* it is likewise clear that to avoid arbitrary and capricious action, the assessment must be in some manner supported by the evidence.

The county, in support of its claim, maintains that it has used comparable sales to arrive at land values and to check what it has done in valuing the Gradoville property. The properties offered by the county as

comparables, however, do not in any serious manner indicate that, in fact, they are comparable and support its claim. The county indicated that it had used at least three other properties which it maintained were comparable. The first was property identified as the "McKenzie property" which was located east of the northern part and across the road from the Gradoville property. The record, however, indicates that considerable improvements to the land had been made, including the bringing in of some 6 inches of black dirt. A home considered by the appraiser as being of excellent quality was constructed on the McKenzie property. Interestingly enough, the McKenzie property, while some 50 acres in size as compared to the 34 acres of the Gradoville property, is assessed at less than the Gradoville property. The comparability between the two is not at all clear in the record.

A second tract of land used by the county as a comparable is property identified in the record as the "Kilton property." This was property located some 5 miles west of the Gradoville property, with a lake and a river frontage. There is nothing in the record to indicate that the properties are in any way comparable except that they are both in Cass County. The third piece relied upon by the county as a comparable is a tract of land some 268.5 acres in size owned by Omaha Fish and Wildlife. There is located upon the property two clear lakes and the land abuts the Platte River. Roberts conceded, however, that it made no difference to him whether the lake upon the "recreational property" was clear and 30 feet deep or shallow and unusable as on the Gradoville property. He said, "It all looks the same depth to me on top." The record does not in any way support the claim that the Omaha Fish and Wildlife property is comparable to the Gradoville property and could be used to establish comparable values.

The record, as it presently exists, indicates that there are 34 acres of wasteland without river frontage

upon which there is constructed a home and eight trailers. Gradoville testified that in her opinion the actual value of the house, plus 4 acres of land upon which the house sits, was in the amount of $25,000; that the remaining 30 acres were worth $15,000. There is no other evidence in this record as to actual value, and in deciding this case de novo we have no other alternative but to determine that the actual value of the 34 acres for the year 1979 must be in the sum of $40,000. While not directly related to the instant case, the record reflected that the house located upon the 34 acres has, for several years, been assessed on other property owned by Gradoville and that it was not until 1979 that the county determined that the property had been assessed on the wrong site. All of this simply goes to show the lack of care which the county exercised in attempting to arrive at the required statutory values for the Gradoville property.

Turning then to the 12-acre tract lying immediately south of the 34 acres, the evidence is even stronger that the valuations placed upon the property by the county is arbitrary. The county has determined that there is located upon the property four structures, two of which are located on 1-acre tracts and two of which are located on half-acre tracts. The record is unclear as to whether all of these alleged structures are mobile trailers or only three of the structures are mobile trailers and one is a building. Gradoville maintained that the trailers were not on the 12-acre tract but, in fact, were on other property owned by Gradoville and already assessed by the county. The trial court, in its order, concluded that at least one of the structures should not have been considered by the assessor and reduced the value of the land by $2,000. The record, however, is totally devoid as to how or in what manner the trial court reached that conclusion. It does not appear, from the record, that the trial court actually viewed the premises. The two 1-acre tracts were assessed by the county at $2,500 each and the

two half-acre tracts at $1,250 each. The remaining 9.45 acres were classified as recreational land and assessed at $500 an acre. Again, the record does not indicate how or in what manner anyone might consider the 12-acre tract rented by Missouri Valley Dredging Company and used by them as a "junkyard" to be recreational land. Gradoville testified that in her opinion the 12-acre tract had a total value of $6,000. There is no other evidence in the record with regard to the actual value. We are, therefore, compelled to find that the value of the 12-acre tract for the year 1979 is in the amount of $6,000.

Lest we leave the wrong impression by our action herein, let us further note that it is not improper for the county, in attempting to arrive at values, to use formulas. Nor is it improper for counties, in arriving at values, to use comparable lands or sales. All of those factors, however, must be part and parcel of an over-all evaluation and must, in some manner, be supported by the facts. Perhaps no one of the actions taken by the county herein, individually and standing alone, might have been sufficient to establish that the valuation was arbitrary and capricious. Nevertheless, when one views the entirety of the record and the absence of any sufficient supporting evidence offered by the county as to how it arrived at its values, one is left with the inescapable conclusion that the valuation was arbitrary and capricious. Neither party should point to this record as an example of how such a case should be tried. The evidence is at best weak and confusing as offered by both parties. It may very well be that upon subsequent valuation the county can establish a higher value. We make no finding in that regard, and only base our decision upon the evidence which is presented to us in the instant case. For the reasons, therefore, set out above, the judgment of the trial court is reversed and remanded with instructions to find that the 34 acres has a value for the year 1979 in the amount of $40,000 and the 12-

acre tract in the amount of $12,000. Having so disposed of the appeal, we need not consider any other assignments of error.

REVERSED AND REMANDED WITH DIRECTIONS.