JACK A. POTTS AND YVONNE L. POTTS, APPELLEES AND CROSS-APPELLANTS, V. THE BOARD OF EQUALIZATION OF HAMILTON COUNTY AND HAMILTON COUNTY, NEBRASKA, APPELLANTS AND CROSS-APPELLEES.

328 N.W.2d 175

Filed December 10, 1982. No. 81-616.

Michael J. Owens, Hamilton County Attorney, for appellants.

Jack A. Potts and Yvonne L. Potts, pro se.

BOSLAUGH, McCOWN, CLINTON, and WHITE, JJ., and BRODKEY, J., Retired.

BRODKEY, J., Retired.

The appellants, the Board of Equalization of Hamilton County and Hamilton County, Nebraska, appeal to this court from a judgment entered by the District Court of Hamilton County finding that the actual value of certain real estate for taxation purposes in 1980, owned by the appellees herein, Jack A. Potts and Yvonne L. Potts, was $150,000. The only issue involved in this appeal is whether or not the property involved in this case was valued and assessed for tax purposes at more than its actual value. No issues as to uniformity or proportionate equalization are involved.

The property in question is residential property owned by the appellees and purchased by them under a contract dated March 5, 1979, reciting a purchase price of $150,000. Thereafter, on August 6, 1979, the State Board of Equalization and Assessment entered its order that certain changes be made to the valuation of property "by class" in the various counties, as set forth in that order. The schedules attached thereto indicate that Hamilton County was to increase the valuation of its urban real property and commercial and industrial property and improvements thereon by 29 percent, following which the Hamilton County assessor placed the actual value of the Potts residence for the year 1980 at a figure of $166,670. The appellees filed their protest from that assessment with the Hamilton County Board of Equalization; and the board, after a visual inspection of the premises by the assessor and two

members of the county board, fixed the value for taxation purposes at $165,590, or approximately $15,000 greater than the 1979 purchase price for the property paid by Mr. and Mrs. Potts. The appellees thereafter appealed that decision to the District Court of Hamilton County; and after a hearing on the matter the District Court, as stated above, set the actual value of the property at $150,000, without stating its reasons for arriving at that figure, but which coincidently was the same as the purchase price paid by the appellees in 1979. The appeal to this court followed.

The real estate in question is an acreage of approximately 8.9 acres with a residential building and garage, occupied by the appellees, and also a barn located thereon. It is located on the westerly edge of Aurora, Nebraska, on U.S. Highway 34. While the property is classed as residential, it borders the industrial development park which has a number of industrial factories located thereon. There is a buffer zone between Highway 34 and the residence, with a shelterbelt containing several hundred mature trees running the length of the southern property boundary and highway right-of-way.

There is little question that the appellees purchased the property in question from their vendor in 1979 in the normal course of business for real estate transactions in an arm's length transaction, although appellants, by innuendo, suggest that the sale was not an "arm's length transaction" because of the fact that at the time of the sale the vendor was in the process of obtaining a divorce from his wife. However, in oral argument before this court the attorney for the appellants conceded that he had no basis for such inference or conclusion.

The statutes of this state provide: "All tangible property and real property in this state, not expressly exempt therefrom, shall be subject to taxation, and shall be valued at its actual value. Such actual value shall be taken and considered as the taxable

value on which the levy shall be made." Neb. Rev. Stat. § 77-201 (Reissue 1981). Also, Neb. Rev. Stat. § 77-112 (Reissue 1981) provides: "Actual value of property for taxation shall mean and include the value of property for taxation that is ascertained by using the following formula where applicable: (1) Earning capacity of the property; (2) relative location; (3) desirability and functional use; (4) reproduction cost less depreciation; (5) comparison with other properties of known or recognized value; (6) market value in the ordinary course of trade; and (7) existing zoning of the property."

Before proceeding with the discussion of the evidence adduced in this case, we point out that no witnesses who appeared at the trial directly testified as to the "actual value" of the property in question, although documentary evidence was introduced at the trial bearing upon that issue. No independent appraisers testified as to the "actual value" of the property, and the only witness who might possibly be considered as an "expert witness" was the county assessor who testified. Mr. Potts, a certified public accountant, appeared pro se in the proceedings and declined to testify orally until the end of the case, at which point he testified to certain matters not relative to the question of "actual value." His evidence on that point (but not testimony) consisted of six exhibits offered in evidence, which exhibits were not objected to by counsel for appellants, and were received in evidence by the court. It is true, however, that on the offer of exhibit 6 by Mr. Potts, counsel for the appellants did state: "Your Honor, I have no objection to the admission of Exhibit No. 6. I think it's generally hearsay. I don't wish to object on that basis, but I think in view of the situation, Mr. Potts representing himself, that that is an indication of his own testimony, and I don't want to object to it, but I think that I would request that the weight of evidence be weighed in that light." Regardless of

counsel's courteous treatment of Mr. Potts, the fact still remains that all of Mr. Potts' proffered exhibits were received in evidence by the court and are evidence in the case, for whatever weight they are entitled to be given.

We now review the exhibits offered on behalf of Mr. Potts and which were received by the court. Exhibit 1 was the agreement for the sale of the real estate to Jack A. Potts and Yvonne L. Potts for the sum of $150,000, which agreement is dated March 5, 1979. Exhibit 2 is a plat, presumably prepared by Mr. Potts, showing the location of their property with reference to the Aurora Industrial Park and surrounding area. Exhibit 3, prepared by Mr. Potts, is his computation of market value of the property less the exemption permitted by statute with reference to trees along the roadside, under Neb. Rev. Stat. § 77-202 (Cum. Supp. 1982), attached to which is an appraisal of the trees in question by the president of First Securities Corporation in Aurora showing the value of 294 trees at $32,925 which, when deducted from the sale price, according to Mr. Potts, would leave a remaining taxable value in the ordinary course of trade of $117,075. There is no evidence in the record with reference to the foundation for the figures used by the appraiser of the trees. It is true that § 77-202 provides in part: "(2) The increased value of land by reason of shade and ornamental trees planted along the highway shall not be taken into account in the assessment of such land." However, Mr. Potts apparently has overlooked the provisions of Neb. Rev. Stat. §§ 77-202.01 and 77-202.02 (Reissue 1981) which provide that any person seeking tax exempt status for any real property shall apply for exemption to the county assessor by January 1 of the year following adoption of §§ 77-202.01 to 77-202.07, on forms prescribed by the Tax Commissioner, and that a hearing shall be held by the county board of equalization to consider the matter. There is no evidence whatsoever in the

record that the appellees ever requested the exemption for shade trees adjoining the highway previously referred to. Potts' exhibit 4, entitled "Comparison with Other Properties of Known or Recognized Value," constitutes his own interpretation of certain residential property sold 3 months before and 3 months after the acquisition of the property in question, and concludes that the resulting actual value based on comparison with other properties of known or recognized value is $117,000. There is no evidence in the record creating a foundation for this exhibit. Exhibit 5 is Potts' comparison of what he asserts to be comparable property owned by one Gary D. Sallans, by which he purports to show that the assessor's valuation of his property was erroneous and that the resulting value by comparison with that property which he claims to be of the same construction class, relative location, and known value is $124,500. There is no evidence to sustain the conclusion that the two properties are indeed comparable and that there are no differences in construction or other differences which might account for the variation. Potts' exhibit 6, entitled "Reproduction Cost Less Regular Depreciation Desirability and Functional Use," also received without foundation, purports to show that the total valuation based upon reproduction cost less functional and economic obsolescence should have been $125,055.

The foregoing constitutes all the evidence on behalf of Potts. The fact remains that all of such exhibits were received in evidence by the court without objection and constitute evidence on behalf of Potts in the record. There may be some question as to the weight to be given to certain of the exhibits, but there is little question that exhibit 1, the sale price of the property in question on March 5, 1979, was properly received and is to be given great weight in determining the "actual value" of the property in question for tax purposes for the year 1980. In their brief on appeal appellees urge that the court reduce

the valuation for the real estate in question to a sum not greater than $125,055. It is interesting to note, however, that in their petition on appeal to the District Court of Hamilton County, Nebraska, they allege "That attached hereto, marked as Exhibit 'A' and incorporated herein by this reference is a copy of a Purchase Agreement with Houtz G. and Dorothy T. Steenburg for the purchase of the above described real estate in the amount of $150,000, *the actual market value of said real estate.*" (Emphasis supplied.)

We recognize that there is a well-established rule of law in this state that there is a presumption that a board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action, which presumption remains until there is competent evidence to the contrary. Once there is competent evidence on appeal to the contrary, the presumption disappears and the reasonableness of the valuation fixed by the board of equalization becomes one of fact based upon the evidence. *Hastings Building Co. v. Board of Equalization,* 212 Neb. 847, 326 N.W.2d 670 (1982); *Otradovsky v. Board of Equalization,* 206 Neb. 559, 294 N.W.2d 334 (1980). In view of what we have stated with reference to appellees' documentary evidence received by the court, we think that under the foregoing rule there can be no presumption that the valuation made by the board of equalization is correct, but that the reasonableness of the valuation in this case is a question of fact to be determined from the evidence.

We now discuss the testimony and evidence adduced by the appellant Hamilton County Board of Equalization. The Hamilton County assessor, Glen Troyer, generally testified that in assessing the appellees' property he had used the Nebraska Construction Cost Manual which he is required by law to use as a guide in assessing real estate. He has the discretion to deviate from the manual if he wishes to do so, but is not obligated to do so. He testified that

in appraising the property in question he had considered the current Construction Cost Manual, depreciation, relative location of the property, comparison with other properties, and market value. Appellees contend, on the basis of the evidence introduced by the assessor, that while normal depreciation was allowed by the assessor in computing the value of the property, no consideration was given to functional or economic obsolescence, which should have been done under the provisions of the Nebraska Construction Cost Manual; and also that the assessor gave no consideration whatsoever to the fact that the residence borders the Aurora Industrial Park, which contains factories, and that this should have been done under the provisions of the manual. They also argue that the county assessor was of the opinion that market value was not a factor in the determination of values. The assessor was aware that the appellees had purchased the property in 1979 for $150,000 but that in his opinion the buyers had received a bargain, and also that he did not consider the one sale as creating market value. He testified that he had arrived at the initial valuation of $166,670 by utilizing the Construction Cost Manual and his judgment on certain factors to establish a base of $129,205, which was then increased by 29 percent as a result of action by the State Board of Equalization. The county assessor's appraisal in the amount of $166,670 was later reduced by the board of equalization to $165,590.

The assessor further testified that after Mr. Potts had filed his protest with the board of equalization, he and others reinspected the property and found out that they had missed a half bath on the original construction and that the barn was overpriced and should have been given a 70 percent depreciation instead of 40 percent, and the figures were thereafter corrected. The assessor was asked: "Q. Do you feel that based upon your inspection and the figures which you used from the manual and also the com-

parison with other similar houses in Aurora and Hamilton County that this figure of $165,590 is *accurate*? A. Yes." (Emphasis supplied.) He did not state, however, that that figure represented the "actual value" of the property for tax purposes. He was also asked: "Q. In other words, location has no bearing on your valuation of real estate in the city of Aurora? A. We feel that—not as far as the building is concerned." He admitted in his testimony that the amount of depreciation and the classification of the real estate in question as to the class as set forth in the manual were judgment matters on his part.

Tom Sherman, one of the Hamilton County commissioners, also testified. He stated that he too had personally inspected the appellees' house and felt that they had received a bargain on their purchase of the premises and that the house in question was one of the best built houses in the county, as was also testified to by the county assessor. Mr. Sherman was asked: "Q. Do you feel that based on your knowledge of the situation that the valuation arrived at by the Board on this protest was a fair and reasonable one? A. Yes, we think it was as fair as we could be. Q. You feel that the fact that—how do you account for the fact that the purchase price is somewhat less than the valuation? A. Well, I agree with Mr. Troyer. He probably got a pretty good buy."

While our statutes require that the assessor consider and use the various elements of "actual value" in the valuation of property for tax purposes, they are merely tools, or guidelines, and the assessor is not bound by them and may deviate from them when, in his opinion, the particular element is not applicable to the case under consideration. We have carefully reviewed the record in this case and have concluded that too much emphasis has been placed upon reproduction costs and other elements, and insufficient consideration was given to relative

location and desirability. Although the District Court did not specifically so state in entering its finding that the actual value of appellees' property was $150,000, it is evident that the court considered that the recent sale price of the property to the appellees for $150,000 was an important consideration in its decision. In short, it felt that the "actual" and "market" value of the property in question was established by that purchase price, market value being one of the seven elements to be considered in determining the "actual" value of property for tax purposes under § 77-112.

Some states have held that the best evidence of true value or actual value is the actual sale of the property in an arm's length transaction. See *Conalco v. Bd. of Rev.,* 50 Ohio St. 2d 129, 363 N.E.2d 722 (1977). Nebraska has apparently not gone that far to the present date, but in *Novak v. Board of Equalization,* 145 Neb. 664, 666, 17 N.W.2d 882, 883 (1945), this court stated: "Plaintiffs rely on the purchase price as constituting the actual value and cite authority from foreign jurisdictions and texts, to the effect that purchase price constitutes the fair market value of property. It is true that the purchase price of property may be taken into consideration in determining the actual value thereof for assessment purposes, together with all other relevant elements pertaining to such issue; however, standing alone, it is not conclusive of the actual value of property for assessment purposes, and many other matters relevant to the actual value of property appear in the record and must be considered in connection with the purchase price to determine the actual value."

Also, in *Collier v. County of Logan,* 169 Neb. 1, 8, 97 N.W.2d 879, 885 (1959), we held: " 'The sale price of property may be taken into consideration in determining the actual value thereof for tax purposes, together with all other elements pertaining to such issue. However, sale price standing alone is not con-

clusive of the actual value of property for tax purposes and other matters relevant to the actual value thereof must be considered in connection with the sale price to determine actual value. The true test in all cases is to arrive at actual value, meaning value in the market in the ordinary course of trade.' "

In *Josten-Wilbert Vault Co. v. Board of Equalization,* 179 Neb. 415, 138 N.W.2d 641 (1965), the court held that evidence that a sale of real estate was made at a price less than the value for tax purposes is not ordinarily sufficient to establish that the value of the property has been unlawfully fixed by the county board of equalization, stating at 417, 138 N.W.2d at 643: "We have held that the presumption of correctness disappears if there is competent evidence to the contrary, and thereafter the reasonableness of the valuation is one of fact to be determined by the evidence. [Citation omitted.] Evidence that a sale was made at a price different than the value for tax purposes is not sufficient competent evidence to overcome the presumption without proof of the character and circumstances of sale. There is no magic formula or mathematical yardstick by which actual value can be precisely determined. No single factor or element of value standing alone is conclusive. While a sale price, in some circumstances, may be a very important factor in determining actual value or fair market value, it is only evidence to be considered along with other evidence. 'Sale price' is not synonymous with actual value or fair market value."

However, in his dissenting opinion to the above case, Judge Boslaugh states at 419, 138 N.W.2d at 644: "Evidence of sale price alone may not be sufficient to overcome the presumption that the board of equalization has valued the property correctly. But where, as in this case, the evidence discloses the circumstances surrounding the sale and shows that it was an arm's length transaction between a seller

who was not under compulsion to sell and a buyer who was not compelled to buy, it should receive strong consideration.''

We are of the opinion that the statement of Judge Boslaugh, as set out in his dissenting opinion above and as concurred in by Judge Brower and Judge Smith, is correct and is particularly applicable to the case under consideration.

Our conclusion is that the trial court did not err in setting the value of the appellees' real estate for tax purposes in the amount of $150,000 under the evidence adduced in the record before us. It is the well-established rule, however, that the trial of an appeal from a county board of equalization involving the valuation of real estate, both in the District Court and the Supreme Court, is de novo as an equitable proceeding. *Beaver Lake Assn. v. County Board of Equalization,* 210 Neb. 247, 313 N.W.2d 673 (1981); *Gradoville v. Board of Equalization,* 207 Neb. 615, 301 N.W.2d 62 (1981). This being so, we must consider the evidence anew and make our own decision, both on the appeal of the Board of Equalization of Hamilton County and also on the cross-appeal filed by the appellees who, in their assignments of error in connection with their brief on cross-appeal, contend that the court erred in adopting as actual value the purchase price of $150,000 and in not finding that the actual value, or total value for assessment purposes, was $125,055 or less. From a de novo review of the evidence as contained in the record before us, we hereby find that the actual value of the property in question for tax purposes for the year 1980 is the sum of $150,000, and not the amounts contended for by the respective parties to this appeal and cross-appeal, and the county assessor of Hamilton County is directed to correct his records accordingly.

The judgment of the District Court is affirmed.

AFFIRMED.