GREENWOOD RANCH, INC., A NEBRASKA CORPORATION, APPELLANT, V. MORRILL COUNTY BOARD OF EQUALIZATION, APPELLEE.
439 N.W.2d 760

Filed May 12, 1989.    No. 87-520.

A.T. Reddish, of Reddish & Schneekloth, for appellant.

Jean Rhodes, Morrill County Attorney, for appellee.

BOSLAUGH, WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and WITTHOFF, D.J.

FAHRNBRUCH, J.

Plaintiff, Greenwood Ranch, Inc., appeals a Morrill County District Court order affirming the $170,355 valuation placed upon improvements on Greenwood Ranch by the Morrill County Board of Equalization (Board) for the 1986 tax year. We affirm.

Greenwood Ranch's assignments of error may be summarized that the trial court erred (1) in upholding the Board's valuation of the improvements and (2) in admitting testimony of the Board's appraiser, Tim Rounds, concerning the equalization of valuations across the county.

An appeal from a county board of equalization is tried by the district court de novo as in equity and considered by this court de novo on the record from the district court. Where credible evidence is in conflict, this court may give weight to the fact that

the trial judge observed the witnesses and accepted one version of the facts over another. *Affiliated Foods Co-op v. County of Madison*, 229 Neb. 605, 428 N.W.2d 201 (1988); *Equitable Life v. Lincoln Cty. Bd. of Equal.*, 229 Neb. 60, 425 N.W.2d 320 (1988).

On appeal, a court presumes the board of equalization faithfully performed its duties in making an assessment and acted upon sufficient competent evidence to justify its action. The presumption remains until there is competent evidence to the contrary. *Hastings Building Co. v. Board of Equalization*, 212 Neb. 847, 326 N.W.2d 670 (1982); *Gradoville v. Board of Equalization*, 207 Neb. 615, 301 N.W.2d 62 (1981). The presumption amounts to a burden on the property owner to prove the action of the board of equalization in fixing or determining the valuation of property for tax purposes was unauthorized by or contrary to the constitutional or statutory provisions governing taxation. *Chief Indus. v. Hamilton Cty. Bd. of Equal.*, 228 Neb. 275, 422 N.W.2d 324 (1988); *Gordman Properties Co. v. Board of Equal.*, 225 Neb. 169, 403 N.W.2d 366 (1987).

The improvements involved in this action are located on a 40-acre tract of land in Morrill County, Nebraska, and comprise the headquarters of the Greenwood Ranch, a diversified agricultural operation of 11,011 acres. Valuation of the land is not at issue. The improvements included three houses, one double-wide trailer, one Flamingo trailer, a barn, a cattle shed, two wooden bins, a steel bin, an elevator granary with an elevator leg, a railroad caboose, a Quonset, a Morton equipment shed, and corrals.

For tax purposes, counties must assess property at its actual value. Neb. Rev. Stat. § 77-201 (Reissue 1986); *Hastings Building Co. v. Board of Equalization, supra.* Neb. Rev. Stat. § 77-112(1) (Reissue 1986) defines "actual value" as being the property's value "ascertained by using the following formula *where applicable*: (a) Earning capacity of the property; (b) relative location; (c) desirability and functional use; (d) reproduction cost less depreciation; (e) comparison with other properties of known or recognized value; (f) market value in the ordinary course of trade; and (g) existing zoning of the

property." (Emphasis supplied.)

At trial, all the witnesses agreed that earning capacity was not an appropriate method to arrive at actual value for the Greenwood Ranch improvements. The property is not under zoning restrictions. Therefore, these factors were properly not taken into consideration for valuation purposes.

Both of the appraisers testifying for Greenwood Ranch were unable to find comparable sales of like property in Morrill County. One of the appraisers testified there were sales of land and improvements in nearby counties, but his references and comparisons were without detailed reference to specific sales or prices. Basically, any reference to comparable sales lacked sufficient foundation for proper comparison.

The county assessor and Greenwood Ranch's appraisers agreed that there are three recognized methods of determining actual value: (1) by capitalizing earning capacity; (2) by using comparable sales; and (3) by determining replacement cost and deducting therefrom various depreciation factors. Since there was no earning capacity and since suitable comparable sales were not available, the only appraisal method that could be used was replacement cost less depreciation.

Where the evidence shows the assessed value of property has been determined by a formula in substantial compliance with Neb. Rev. Stat. § 77-112, which has been uniformly and impartially applied, such assessed value will not ordinarily be disturbed on appeal on evidence indicating a mere difference of opinion as to the valuation. *Lexington Building Co., Inc. v. Board of Equalization*, 186 Neb. 821, 187 N.W.2d 94 (1971); *Newman v. County of Dawson*, 167 Neb. 666, 94 N.W.2d 47 (1959).

For the 1986 tax year, with the formula in § 77-112(1) she found applicable, the county assessor first determined replacement cost for improvements on land in Morrill County. In doing so, she utilized the Marshall Valuation Service and Residential Cost Handbook (Marshall-Swift manual) as prescribed by the Nebraska Department of Revenue. Under this method, the replacement cost is determined based upon measurements and the grade of the buildings. After that cost is fixed, the assessor determines the depreciation factors

applicable in the area and applies these to the specific property being valued.

The records of the Morrill County assessor's office reflected the measurements for all buildings on the Greenwood Ranch land. Based on those measurements and the grading determined through visual inspection, the assessor determined the replacement cost of Greenwood Ranch's improvements. To arrive at the tax valuation, the assessor then adjusted the replacement cost to reflect applicable depreciation factors. On the houses and trailers, the assessor allowed a 25 percent depreciation factor for location and allowed physical depreciation in amounts ranging from 10 percent on the owner's home, which had been remodeled, to 50 percent on the Flamingo trailer. On the other buildings, the assessor allowed a 10 percent depreciation factor for location, and physical depreciation ranging from 5 percent on the Morton building to 50 percent on the elevator leg. No functional depreciation was taken, except to exclude from valuation the loft portion of the barn and the elevator portion of the granary. The assessor valued the improvements for 1986 tax purposes at $170,820.

The evidence presented at trial shows in arriving at the assessed valuation, the assessor considered replacement cost, physical depreciation, relative location, functional depreciation, and the local market. Department of Revenue surveys showed improvements in Morrill County were assessed at approximately 70 percent of the actual selling price.

The Board reduced the assessor's valuation to $170,355, based upon suggestions made by Tim Rounds, who inspected the property on behalf of the Board.

The evidence presented by Greenwood Ranch did not dispute the method which the Morrill County assessor used. Rather, the dispute between the witnesses for Greenwood Ranch and those in favor of the assessor's valuation primarily centered on the proper amount of depreciation to be deducted from the replacement cost. As such, the dispute involves a difference of opinion as to valuation; it does not show the defendant used an improper method of determining actual value.

Greenwood Ranch failed to show the method used by the assessor and the Board was unauthorized by or contrary to the

constitutional and statutory provisions governing taxation. Therefore, the trial court was correct in affirming the board of equalization's valuation. Greenwood Ranch never overcame the presumption in favor of the Board set forth in *Hastings Building Co. v. Board of Equalization*, 212 Neb. 847, 326 N.W.2d 670 (1982).

Greenwood Ranch also claims the trial court erred in allowing Rounds to testify concerning the equalization of the valuation across the county. Greenwood Ranch claims that testimony of Rounds was irrelevant to the issue before the court, which was the actual value of the improvements. Greenwood Ranch allowed the assessor to testify without objection as to the equalization of values throughout the county. Where the testimony objected to is substantially similar to evidence admitted without objection, no prejudicial error has occurred. *White v. Lovgren*, 222 Neb. 771, 387 N.W.2d 483 (1986); *In re Estate of Hill*, 214 Neb. 702, 335 N.W.2d 750 (1983).

For the foregoing reasons, we affirm the valuation placed upon the Greenwood Ranch improvements by the Morrill County Board of Equalization.

AFFIRMED.

BOSLAUGH, J., dissenting.

The property owner's complaint in this case was that the improvements on the property were assessed at a value in excess of their actual value. For purposes of taxation, the terms actual value, market value, and fair market value mean exactly the same thing. Many elements enter into the determination of actual value, some of which are set out in Neb. Rev. Stat. § 77-201 (Reissue 1986). *Gradoville v. Board of Equalization*, 207 Neb. 615, 301 N.W.2d 62 (1981).

The record shows that the improvements were assessed on a cost of reproduction basis less depreciation as prescribed by the Marshall-Swift manual. Such a procedure may or may not result in an assessment at actual value. The testimony of the assessor and Tim Rounds, the expert employed by the appellee, shows that no effort was made to correlate the values arrived at through the cost of reproduction less depreciation method with the actual value of the improvements. In fact, the assessor

admitted that some of the buildings were probably valued higher than it would cost to buy them in the market. The substance of the testimony of the assessor and Rounds was that the taxpayer had been treated fairly and that values throughout the county were equalized.

The owner produced the testimony of two expert real estate appraisers. They testified that in their respective opinions the improvements had a market value of $65,000 and $87,200—as contrasted with the value of $170,355 set by the board of equalization. I think it is apparent from the record that the appraisal method used by the assessor failed to allow adequate functional depreciation, which resulted in an assessment far in excess of the market value of the improvements.

The president of the corporate owner of the property and the tenant operating the improvements testified that many of the improvements were not usable. One house was originally an old Army barracks, converted into a home. Some of the floor joists of this building were rotted. It was not occupied as a residence, but was being used as an office. It was valued at $23,414. A trailer house on the property, valued at $6,900, was actually sold in December 1986 for $1,500. The caboose, valued at $3,526, was placed on the property only for aesthetic purposes and was not being used.

The barn roof leaked badly and was therefore unusable for storage. The barn, which was valued at $12,532, was used only to tie up a few horses and as a place to saddle them. A shed used to store machinery was in such poor condition that during a snowstorm in 1987, 80 percent of the building caved in. Before it fell down, it had been assessed at $1,040. A granary, assessed at $13,482, could not be used for any extended storage of grain because it was not weathertight. The lessee of the ranch testified that because of the capacity of the mill and the storage facilities on the property, they were of no use to him because they were too small for the size of his feeding operation or a feeding operation that would be economically feasible. The three grain bins were in poor shape and could not be used for storage for extended periods. The Quonset was used for machinery storage, but could not be used for grain storage because it leaked. The Morton steel building was the newest and most

useful building on the property.

In my opinion, the evidence was such that on trial de novo, the actual value of the improvements should be determined to be $87,200.