LAWRENCE W. DOWD ET AL., APPELLANTS, V. BOARD OF EQUALIZATION OF BOONE COUNTY, NEBRASKA, ET AL., APPELLEES.

482 N.W.2d 583

Filed April 10, 1992.   No. S-89-424.

Duane J. Dowd for appellants.

Larry D. Bird, Boone County Attorney, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

Plaintiffs have appealed from the order of the district court which affirmed the action of the board of equalization of Boone County (Board) in denying plaintiffs' protest of the valuation of their hog confinement unit located on a fraction of the northeast quarter of Section 32, Township 20 North, Range 6 West of the 6th P.M., in Boone County, Nebraska, referred to as Parcel 282. This case is a consolidation of two separate appeals from the Board involving the tax years 1987 and 1988. The plaintiffs assign as error that the assessed valuation of the property which was approved by the Board and affirmed by the district court was far in excess of its actual value.

An appeal from action by a county board of equalization is an equity action tried de novo in the district court. *First Nat. Bank v. Otoe Cty.*, 233 Neb. 412, 445 N.W.2d 880 (1989). On appeal from the district court to an appellate court, an equity case is tried as to factual issues de novo on the record, requiring the appellate court to reach a conclusion independent of the findings of the trial court. *First Nat. Bank, supra.* However, when credible evidence conflicts, the appellate court may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *First Nat. Bank, supra.*

On appeal, a court presumes the board of equalization faithfully performed its duties in making an assessment of value and acted upon sufficient competent evidence to justify its action. The presumption remains until there is competent evidence to the contrary. *Greenwood Ranch v. Morrill Cty. Bd. of Equal.*, 232 Neb. 114, 439 N.W.2d 760 (1989). From that point on, the question of unreasonableness of valuation fixed by the board of equalization becomes one of fact based upon the evidence, unaided by the presumption. *Affiliated Foods Co-op v. County of Madison*, 229 Neb. 605, 428 N.W.2d 201

(1988).

The presumption amounts to a burden on the property owner to prove that the action of the board of equalization, in fixing or determining the value of real estate for tax purposes, is unauthorized by or contrary to constitutional or statutory provisions governing taxation. *First Nat. Bank, supra.*

The property involved in these proceedings is a hog confinement unit located on 13 acres of land and consisting of a garage, office, gestation barn, farrowing barn including farrowing crates, nursery shed, hopper units, loading chute, concrete walkways, and a metal canopy. On December 27, 1985, 10 acres of land were purchased by the plaintiffs as a part of the sale of the entire operating confinement unit, and the additional 3 acres were purchased on January 20, 1986. According to the testimony of Lawrence W. Dowd, one of the plaintiffs and the farm manager of the unit, referring to the 10-acre sale, the land and improvements were purchased for $75,000 and the existing herd and personal property for $150,000.

The testimony of Dowd was corroborated by exhibit 7, a bill of sale which listed a purchase price of $150,000 for 474 sows, 21 boars, 1,500 pigs, a 460 International tractor, and various other tools, equipment, and supplies, and a warranty deed, exhibit 5, covering the 10 acres, listing a consideration of $75,000. Both documents are dated December 27, 1985. It was stipulated by the parties that the transactions involving the sale of the unit, both the real estate and the personal property, were arm's-length transactions. Exhibit 6 is a warranty deed dated January 20, 1986, conveying the adjoining 3 acres to the plaintiffs for a consideration of $5,000.

According to the property card record for Parcel 282, exhibit 1, the improvements were valued in 1985 at $190,505, and the same valuation was carried through 1987 and 1988. The total valuation for Parcel 282, including the underlying land, was set at $197,165 for both 1987 and 1988. It is these valuations of which the plaintiffs complain.

John Fritz, a qualified real estate appraiser, testified for the Board. He stated that he inspected the premises and used the cost approach to evaluate the property. Fritz explained that he

could not use the income and market approach because the state could not provide him with enough income and market data.

Fritz went on to testify that he determined the new cost price of the various buildings comprising the hog confinement unit by using the Marshall-Swift manual and the Nebraska Department of Revenue supplement. This involves inspecting the various buildings, making measurements, and applying a square foot cost factor. Subsequently, he used a measurement for depreciation, added a current cost multiplier for depreciation, and added a current cost multiplier and local multiplier to ascertain the present cost replacement price. Other than testifying that in 1986 he had valued the "real estate at $190,505," which obviously he meant to identify as the improvements, and that "[t]he land value was at in '86 $6,660 [sic], for total valuation of the parcel of $197,165," Fritz never mentioned another figure. He concluded his testimony by stating that he was of the opinion that the property was valued equally and fairly with the other property in the county and that "[t]he actual value I believe is the value that we have on the property at the present time." He added that the actual value would apply to both the 1987 assessment year and the 1988 assessment year for the hog confinement unit.

When asked on cross-examination why he had not used the December 1985 sale price in calculating the value of the property, Fritz answered that the sale occurred after the initial evaluation and involved a considerable amount of livestock. He looked at the agreement which included all the personal property and livestock (exhibit 7, the bill of sale, which set forth a sale figure of $150,000) and acknowledged that the livestock was the majority of the value.

Frances Berlin, the Boone County assessor, also testified in behalf of the Board. She was not asked if nor did she testify that she had ever inspected Parcel 282. She did state that she compiles information with regard to property sales in Boone County. She compares the sale prices of the property with the value assessed. The tract of land in this case, she said, would be classified as commercial and industrial. She also admitted that there were not enough commercial and industrial property sales

in Boone County in 1987 to make a good ratio study. However, she said, there were sufficient sales in 1988 to determine a sales-assessment ratio of 92.67. Berlin did not offer an opinion as to the value of Parcel 282.

Dowd testified in court that the acquisition of the property in December 1985 included real estate and personal property. He stated that a separate price was negotiated for the personal property and the herd. Of the total sale price of the hog confinement unit as a going concern, $75,000 was paid and was allocated to the real estate and improvements, and $150,000 was paid for the herd and miscellaneous personal property. Dowd stated that two separate offers in dollars for those amounts were made and were accepted by the sellers. The record contains two deeds. One deed conveyed the original 10-acre tract and improvements for a consideration of $75,000, and a second deed conveying the adjoining 3-acre tract recited a consideration of $5,000. The bill of sale, exhibit 7, as previously stated, enumerated the various animals making up the herd, as well as other personal property, and revealed a purchase price of $150,000. Both parties agree that the transaction was at arm's length.

Dowd was permitted to testify over the objection of the Board that plaintiffs had purchased a similar hog confinement unit in Richardson County in 1986. The only difference was that the Richardson County unit has a 25-percent larger nursery. The price paid for the real estate in Richardson County, which contains approximately 9.2 acres (see exhibit 8, 500 by 800 feet equals 400,000 square feet, which when divided by the area of an acre, 43,560 square feet, equals 9.18 acres), was $79,500. This unit also contained a herd of pigs that was separately purchased. The bill of sale for the personal property, exhibit 9, recited a consideration of $197,200, which included 509 sows for $152,700, 22 boars for $11,000, and 1,275 feeder pigs for $31,875. This livestock, together with various items of personal property totaling $1,625, made up the purchase price of $197,200.

Admittedly, the value of real estate in Richardson County generally would have no relationship to that located in Boone County. However, the evidence was relevant to show how the

total value of the total purchase price and presumably the value of the hog confinement unit purchased in Boone County could reasonably be divided between the value of the real estate and the value of the herd.

Bailey Griffith, a consultant in hog farm management, testified on behalf of the plaintiffs. Among other things, after having consulted market reports for the time applicable to the assessment date in Boone County, he determined that the fair market value for sows was $230, for boars, $550, and for feeder pigs, $15. When those values are applied to the hogs included in the bill of sale, exhibit 7, for the personal property included in the sale of the Boone County unit, 474 sows, 21 boars, and 1,500 feeder pigs would result in a value of $143,070 of the total consideration of $150,000 set forth in the bill of sale, including the hogs, a tractor, an electrical generator, a pump, handtools, and supplies.

Although Griffith conceded that he was a hog businessman and not a real estate expert, he gave as his opinion that the sum of $150,000 paid for the personal property listed as covering the hog confinement unit, including the herd, was its fair and reasonable market value.

It was the conclusion of the district court that evidence of a sale by itself indicating a price difference from the value for tax purposes is not sufficient competent evidence to overcome the presumption that a board of equalization performs its official duties faithfully and acts upon sufficient competent evidence in making its assessment. In arriving at this conclusion, the trial court noted that both sales, i.e., the sale of the real estate and the sale of the herd, "were dependent upon each other and in fact they were one sale which the buyer and seller had attempted to allocate part to the real estate and part to the non-real estate components." The court concluded that although the evidence did show an arm's-length transaction as to the total sale, it did not as to the separate components, and that the plaintiffs had not met their burden of proof of establishing that the tax assessment was erroneous. The court dismissed the plaintiffs' case.

Real property shall be subject to taxation at its actual value. Neb. Rev. Stat. § 77-112 (Reissue 1986); *Greenwood Ranch v.*

*Morrill Cty. Bd. of Equal.*, 232 Neb. 114, 439 N.W.2d 760 (1989). Section 77-112 provided in part:

> [A]ctual value of property for taxation shall mean and include the value of property for taxation that is ascertained by using the following formula where applicable: (a) Earning capacity of the property; (b) relative location; (c) desirability and functional use; (d) reproduction cost less depreciation; (e) comparison with other properties of known or recognized value; (f) market value in the ordinary course of trade; and (g) existing zoning of the property.

This section, which specifies factors for determining actual value of real estate for tax purposes, does not require use of all the specified factors, but requires use of applicable statutory factors, individually or in combination, to determine the actual value of the real estate for tax purposes. *First Nat. Bank v. Otoe Cty.*, 233 Neb. 412, 445 N.W.2d 880 (1989); *Affiliated Foods Co-op v. County of Madison*, 229 Neb. 605, 428 N.W.2d 201 (1988).

In tax valuation cases actual value is largely a matter of opinion and without a precise yardstick for determination with complete accuracy. *First Nat. Bank, supra.*

"Actual value" has been held many times to mean exactly the same as "market value" or "fair market value." *Equitable Life v. Lincoln Cty. Bd. of Equal.*, 229 Neb. 60, 425 N.W.2d 320 (1988).

Where the evidence shows the assessed value of property has been determined by a formula in substantial compliance with § 77-112, which has been uniformly and impartially applied, such assessed value will not ordinarily be disturbed on appeal on evidence indicating a mere difference of opinion as to the valuation. *First Nat. Bank, supra; Greenwood Ranch, supra.*

In *Greenwood Ranch, supra*, the parties agreed on the three recognized methods to determine the actual value as set forth in § 77-112. Since there was no earning capacity and since suitable comparable sales were not available, the only appraisal method that could be used in that case was the replacement cost less depreciation. The assessor in *Greenwood Ranch* used the Marshall-Swift manual and considered replacement cost,

physical depreciation, relative location, functional depreciation, and the local market. The taxpayer did not dispute the method which the assessor used, but contested the amount of depreciation to be deducted from the replacement cost. Although the dispute involved a difference of opinion as to valuation only, the court concluded that the taxpayer failed to show that "the method used by the assessor and the Board was unauthorized by or contrary to the constitutional and statutory provisions governing taxation." *Greenwood Ranch*, 232 Neb. at 118-19, 439 N.W.2d at 763.

As we have seen, nothing requires a county assessor or county board to use all the factors set forth in § 77-112 to arrive at a proper valuation. In the final analysis the test is not what factors the assessor considered or failed to consider, but whether the property in question was valued for tax purposes at its actual value. *Airport Inn v. County Bd. of Equalization*, 215 Neb. 659, 340 N.W.2d 378 (1983).

However, the plaintiffs argue that the mathematical formulas based on manuals used by the assessor should be adjusted when the assessment is disproportionate with regard to the price sold in an arm's-length sale. The plaintiffs base their argument on *Potts v. Board of Equalization*, 213 Neb. 37, 328 N.W.2d 175 (1982).

Neb. Rev. Stat. § 77-1511 (Reissue 1990) provides: "The [district] court shall affirm the action taken by the board unless evidence is adduced establishing that the action of the board was unreasonable or arbitrary . . . ."

In an appeal from property valuations set by a board of equalization, the taxpayer has the burden of proving that the value of his or her property has been arbitrarily or unlawfully fixed by the board in an amount greater than its actual value. *Riha Farms, Inc. v. County of Sarpy*, 212 Neb. 385, 322 N.W.2d 797 (1982).

*Potts v. Board of Equalization, supra*, is of particular significance in deciding this case. There, the taxpayers had bought residential real estate for the price of $150,000. The sale was an arm's-length transaction. In the same year, the State Board of Equalization and Assessment increased the valuation of urban, commercial, and industrial real property by 29

percent. The assessor valued the Potts residence for the year 1980 at $129,205, which was then increased by 29 percent to $166,670. The board of equalization subsequently reduced the value to $165,590.

The taxpayers appealed, and the district court set the actual value of the property at $150,000. The board of equalization appealed the decision to the Supreme Court. The taxpayers cross-appealed, arguing that the value should have been assessed at $125,055. The court noted that none of the witnesses testified as to the actual value at trial and that no appraisers, except for the county assessor, testified. However, documentary evidence such as the sale agreement was introduced into evidence. Potts also introduced into evidence two exhibits in which he compared the value of his property with other real estate and on that basis concluded that the appraisal of the assessor was erroneous. The county assessor in *Potts* testified that he had used the Nebraska Construction Cost Manual, which he was required to use as a guide in assessing real estate. He also considered depreciation, location, and market value, and he compared the real estate with other properties. The taxpayers argued that no consideration was given to functional or economic obsolescence, which should have been done under the Nebraska Construction Cost Manual. The assessor was aware that the property was purchased for $150,000, but did not use this information in his assessment because he found that the owners had received a bargain. This court held:

> It is true that the purchase price of property may be taken into consideration in determining the actual value thereof for assessment purposes, together with all other relevant elements pertaining to such issue; however, standing alone, it is not conclusive of the actual value of property for assessment purposes . . . .
>
> . . . " '[O]ther matters relevant to the actual value thereof must be considered in connection with the sale price to determine actual value. . . .' "

*Potts*, 213 Neb. at 46-47, 328 N.W.2d at 180. However, the court went on to adopt the dissent of Justice Boslaugh in *Josten-Wilbert Vault Co. v. Board of Equalization*, 179 Neb.

415, 138 N.W.2d 641 (1965), which held:

> "Evidence of sale price alone may not be sufficient to overcome the presumption that the board of equalization has valued the property correctly. But where, as in this case, the evidence discloses the circumstances surrounding the sale and shows that it was an arm's length transaction between a seller who was not under the compulsion to sell and a buyer who was not compelled to buy, it should receive strong consideration."

*Potts*, 213 Neb. at 47-48, 328 N.W.2d at 181.

This court then pointed out that its review was de novo as an equitable proceeding and, considering the evidence anew, concluded that the actual value for tax purposes of the property was $150,000, "and not the amounts contended for by the respective parties to this appeal and cross-appeal . . . ." *Id.* at 48, 328 N.W.2d at 181.

We realize that a taxpayer may not control the valuation of his or her property for tax purposes by assigning an arbitrary sale price to the real estate and to the personal property included in a purchase, nor is the actual sale price conclusive on the question of valuation. Nevertheless, in this case it is difficult to ignore the portion of the total sale price represented by the value of a herd of hogs, the market price of which was as realistic and specific as the quotations for stocks, bonds, or commodities listed on recognized exchanges. For that reason we have concluded that the valuation placed on plaintiffs' property by the assessor and the Board was unreasonable and arbitrary, and accordingly, we have subtracted the value of the herd, $143,070, from the combined total sale price of $230,000, and find that the actual value of Parcel 282 for tax purposes for the years in question is the sum of $86,930. The county assessor of Boone County is directed to correct her records accordingly.

The judgment of the district court is reversed, and the cause is remanded with directions to enter judgment in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.