HASTINGS BUILDING CO., A CORPORATION, ET AL., APPELLEES, v. BOARD OF EQUALIZATION OF ADAMS COUNTY ET AL., APPELLANTS.

326 N.W.2d 670

Filed November 19, 1982. No. 44429.

Arthur C. Toogood, Adams County Attorney, for appellants.

William M. Connolly of Conway & Connolly, for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ.

McCOWN, J.

The plaintiffs, Hastings Building Co. and Hastings Mall, Inc., filed protests with the board of equalization of Adams County complaining that the value of plaintiffs' shopping mall properties for tax purposes as fixed and determined by the county board was in excess of the actual value of the properties for the years 1979 and 1980 and that such assessments were excessive, arbitrary, and unreasonable. The protests were denied by the county board and plaintiffs appealed to the District Court. The cases were consolidated in the District Court. The District Court determined that the property had an actual value of $4,400,000 for each of the years 1979 and 1980 and that the assessment of the property should be reduced to that figure for both years, and directed that the assessment records be corrected accordingly. The defendants have appealed.

The real estate involved here is a retail shopping mall located in the city of Hastings, Nebraska, known as Imperial Mall Shopping Center. Plaintiff Hastings Building Co., a corporation, is the owner

and lessor of the real estate, and the plaintiff Hastings Mall, Inc., a corporation, is the lessee of the real estate and owner of the improvements situated on the real estate.

The property was valued and assessed for the year 1979 at an actual value of $4,715,360. The plaintiffs filed a protest against the assessment on the ground that the value of the assessment was in an amount greater than the actual value of the property. The county board of equalization determined the actual value of the property was $4,715,360 and denied plaintiffs' protest. The plaintiffs appealed to the District Court.

Thereafter, the State Board of Equalization and Assessment ordered an increase of 29 percent on all urban property in Adams County. In accordance with that determination the county assessor increased the valuation and assessment of plaintiffs' property to $6,082,815 for 1980. The board of equalization also denied plaintiffs' protest of the 1980 valuation and assessment, and plaintiffs appealed to the District Court. The cases were consolidated in the District Court for trial.

At the hearing in the District Court the evidence established that in 1977 Western Appraisal Company reappraised all real property in Adams County and appraised plaintiffs' property at $4,715,360. The assessor and the county board relied upon that appraisal for the valuation and assessment of plaintiffs' property for 1979. The assessor and the chairman of the county board admitted that the board relied on the Western appraisal figure but that they had no independent knowledge of how Western reached the valuation figure for plaintiffs' property. No evidence was presented at trial to establish the basis used by Western in appraising plaintiffs' property, and no representative of Western Appraisal Company testified. The Western appraisal of plaintiffs' property was therefore not admitted into evi-

dence. The evidence was undisputed that the basis for the 1980 valuation and assessment was the order of the State Board of Equalization and Assessment directing an increase of 29 percent and the application of that percentage to the Western appraisal figure.

An expert witness and real estate appraiser testifying for the plaintiffs testified that he had used a cost approach, a market data approach, and an income approach, and that after considering all factors, he testified that the fair market value of the property for 1979 was $3,500,000 and that the value remained the same for 1980. He also testified that in his opinion the income approach was the most reliable method for valuing a shopping center.

Another witness for the plaintiffs, who was a tax consultant, testified that, using an income approach, the value of the property was $3,037,717 for 1979 and $2,776,743 for 1980.

An expert witness for the defendants testified that he also used cost, income, and market data approaches and that, in his opinion, the market value of the property for 1979 and 1980 was $5,500,000.

On May 26, 1981, the District Court found that the plaintiffs had rebutted the presumption that the assessed value was correct, and found that the actual market value of the property in the years 1979 and 1980 was $4,400,000 and that the value of plaintiffs' property had been arbitrarily fixed and assessed in an amount greater than its actual value. The court directed that the assessment books be corrected accordingly. The county has appealed.

The only issue on this appeal is whether or not the property involved in this case was valued and assessed for tax purposes at more than its actual value. No issues as to uniformity or proportionate equalization are involved.

This court has consistently held that in an appeal from property valuations set by a board of equalization, the taxpayer has the burden of proving that the

value of his property has been arbitrarily or unlawfully fixed by the board of equalization in an amount greater than its actual value, *or* that its value has not been fairly and proportionately equalized with all other property, resulting in a discriminatory, unjust, and unfair assessment. *Riha Farms, Inc. v. County of Sarpy, ante* p. 385, 322 N.W.2d 797 (1982).

The trial of an appeal from a county board of equalization involving the valuation of real estate, both in the District Court and the Supreme Court, is de novo as an equitable proceeding. There is a presumption that a board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action, which presumption remains until there is competent evidence to the contrary. Such presumption disappears when there is competent evidence on appeal to the contrary, and from that point on the reasonableness of the valuation fixed by the board of equalization becomes one of fact based upon the evidence, with the burden of showing such valuation to be unreasonable resting upon the appellant on appeal from the action of the board. *Beaver Lake Assn. v. County Board of Equalization,* 210 Neb. 247, 313 N.W.2d 673 (1981); *Gradoville v. Board of Equalization,* 207 Neb. 615, 301 N.W.2d 62 (1981).

In the present case there is no evidence to support a finding that the actual value of plaintiffs' property for 1980 was even close to the amount shown on the assessment records. The highest valuation placed upon the property by the county's own real estate expert witness was $5,500,000 and the lowest valuation placed on the property by any real estate expert witness was $3,500,000. The District Court, which saw and heard the witnesses and was familiar with the local situation, performed the function of a fact finder and determined that the actual value of the property was $4,400,000 and that the assessed

valuations were excessive, arbitrary, and capricious.

Under Neb. Rev. Stat. § 77-201 (Reissue 1981) all tangible and real property subject to taxation is required to be valued at its actual value. For purposes of taxation the terms actual value, market value, and fair market value mean exactly the same thing. *Riha Farms, Inc. v. County of Sarpy, supra.*

The record in this case clearly rebuts the presumption of the correctness of the assessed valuation and establishes that the valuation of plaintiffs' property for the years 1979 and 1980 was made arbitrarily and capriciously. The judgment of the District Court was correct and is affirmed.

AFFIRMED.

CLINTON, J., participating on briefs.

BOSLAUGH, J., concurring.

I concur fully in the opinion of the court, but I think it is important to point out that the judgment of the District Court established the actual value of the property in question for the years 1979 and 1980. Since this was the actual value of the property, it was not subject to the 29 percent increase on all urban property in Adams County imposed by the State Board of Equalization and Assessment for those years.