KEARNEY CONVENTION CENTER, INC., APPELLANT, V.
BUFFALO COUNTY BOARD OF EQUALIZATION, APPELLEE.
344 N.W.2d 620

Filed January 27, 1984. No. 83-096.

Robert A. Munro of Munro & Munro, P.C., for appellant.

Gerald R. Jorgensen, Deputy Buffalo County Attorney, for appellee.

Senators DeCamp, Beutler, Labedz, V. Johnson, Schmit, Higgins, Hoagland, and Pappas, amici curiae.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Plaintiff-appellant, Kearney Convention Center, Inc. (hereinafter taxpayer), is the owner of the Holi-

day Inn in Kearney, Buffalo County, Nebraska. The Buffalo County assessor assessed taxpayer's property for the year 1981 and fixed the actual value of the property at $3,563,765. For the prior year the actual valuation was fixed by the assessor at $2,304,430.

The taxpayer timely filed a written protest with defendant-appellee, Buffalo County Board of Equalization (hereinafter County Board). At the hearing on this protest the County Board did not change the 1981 valuation. The taxpayer then timely appealed to the district court for Buffalo County, where the matter was submitted on a joint stipulation of facts. The trial court dismissed the petition on appeal and affirmed the action of the County Board. This appeal followed.

On appeal the taxpayer's six assignments of error can be condensed to three points: (1) That the trial court erred in failing to find that two dissimilar methods of appraisal resulted in "blatant disparity in actual value between urban and agricultural real estate [and] constitutes unlawful lack of uniformity and proportionality within a class (real estate)"; (2) That the trial court erred in holding that the convention center's claim of disproportionate assessment required a comparison with all other types of property in Buffalo County; and (3) That the trial court erred in refusing to grant the convention center tax relief based on a lack of uniformity and proportionality of valuation.

For the reasons hereinafter stated we reverse and remand.

As stated above, all facts in the case were submitted in a joint stipulation of facts. Those facts show that an appraisal of all real and personal property in Buffalo County was conducted by the county assessor's office for the tax year 1981. In making the countywide appraisal for 1981, the assessor was required by the state Tax Commissioner to use the Marshall Valuation Service (published by Marshall and Swift Publication Company, and hereinafter

Marshall and Swift manual) in appraising all building improvements, and to use the Nebraska Agricultural Land Valuation Manual (hereinafter Land Manual) in appraising all real estate, including irrigated and dryland farm ground.

The valuation technique used in the Marshall and Swift manual is cost of reproduction less depreciation. Cost figures for labor and materials were stated in the Marshall and Swift manual in current (1981) dollars. This usage of current dollars was a departure from earlier assessing practices which had been based on the Nebraska Building Construction Manual prepared and issued by the Nebraska Tax Commissioner. The Nebraska construction manual had used cost figures based on 1976 dollar values, and had been used through 1980. The switch to the Marshall and Swift valuation technique for the taxable year 1981 had resulted in the increased valuation of the improvements on taxpayer's land from $2,072,730 to $3,332,065. The land itself was valued in both 1980 and 1981 at $231,700. This resulted in an overall assessed value increase as to taxpayer's improved real property of $1,259,335, or an increase of approximately 53 percent. The taxpayer's expert witness agreed that the Marshall and Swift valuation method used by the county assessor was a proper technique; that the method was properly utilized by the assessor; and that "the fair market value - actual value of the Kearney Holiday Inn was approximately equal to the valuation of $3,563,765.00 set by the Buffalo County Assessor for the year 1981." The taxpayer's expert witness concluded that the actual value or fair market value of the taxpayer's property was $3,385,576.70, or a figure equal to 95 percent of the valuation figure set by the county assessor.

As distinguished from the reproduction cost technique of the Marshall and Swift manual used to determine the actual value of taxpayer's improved real property, the Land Manual uses a valuation technique of capitalization of earnings based on

yield production of various types of soil and the geographical location of the particular land.

The Land Manual was well described in *Box Butte County v. State Board of Equalization & Assessment*, 206 Neb. 696, 702-03, 295 N.W.2d 670, 676 (1980), as follows: "The Land Valuation Manual was developed by the Department of Revenue after extensive research and is based generally on soil types and geographical locations. To be more explicit, agricultural land is classified as irrigated cropland, dryland cropland, rangeland and meadow, and pasture. These in turn are subclassified into valuation groups 1, 2, 3, and 4, based on the productivity of the particular soil, and, when necessary, are further subdivided. Finally, recognizing the decrease in rainfall and growing days when moving from the southeast corner of the state to the northwest corner, the state has been divided into seven land valuation areas. Each land classification and subclassification has a calculated per-acre dollar value, differing in each of the seven land valuation areas. In arriving at these valuations, information was obtained from various farm management companies, county agents, and others as to cash rent data, grazing fees, crop yield data, and share rental information in the various areas, and with that information, a net return to the landlord for the various classes and subclasses was determined to which was applied a capitalization rate to arrive at a value."

Buffalo County is in the south central area of the 7 land valuation areas, along with 15 other counties. As illustrative of the use of the Land Manual, the parties stipulated that the different qualities of soil for crop production in Buffalo County were appraised at the following values for the tax year 1981, using capitalization of earnings valuation technique:

| Irrigated Cropland Land Valuation Group Values Per Acre | | | Dryland Cropland Land Valuation Group Values Per Acre | | |
|---|---|---|---|---|---|
| 1A1 | - | $1,200 | 1D1 | - | $640 |
| 1A | - | 1,070 | 1D | - | 585 |
| 2A1 | - | 940 | 2D1 | - | 510 |
| 2A | - | 810 | 2D | - | 450 |
| 3A1 | - | 680 | 3D1 | - | 380 |
| 3A | - | 580 | 3D | - | 320 |
| 4A1 | - | 470 | 4D1 | - | 225 |
| 4A | - | 360 | 4D | - | 175 |

(The dryland valuations in this stipulation seem to be from the Land Manual's Hall County figures rather than those for Buffalo County, but the differences are insignificant and do not affect the result in this opinion.)

The Buffalo County assessor had broken down all agricultural real estate in the county into the classifications set out in the Land Manual, and had assessed all agricultural land by applying the appropriate value per acre to each such classified acre. In assessing agricultural land in this manner, the county assessor was acting pursuant to the orders of the state Tax Commissioner, as the assessor was required to do by the terms of Neb. Rev. Stat. § 77-1330 (Reissue 1981). The county assessor used no factors other than the Land Manual in the assessment of rural farmland, and used no factors other than the Marshall and Swift manual in assessing taxpayer's improvements on its real property. We have, then, if the foregoing constituted all of the evidence before the trial court, a situation where the taxpayer and the county assessor have agreed, for all practical purposes, that the actual value of taxpayer's improved property is $3,563,765. Both parties agree that the county assessor has properly applied the techniques set forth in the Marshall and Swift manual, and taxpayer agrees that that technique "was a proper technique for real estate improvement valuation." The taxpayer agrees that the fair market value of its property was approximately that determined by the assessor. The taxpayer's expert

reaches this agreement by comparing the county assessor's Marshall and Swift valuation with the expert's valuation "based on his training, experience and review of the 1980-1981 appraisals of urban commercial properties in Buffalo County." Thus, with respect to the taxpayer's property, the value of that property, as determined by the assessor in using the prescribed Marshall and Swift manual, is essentially the same as the value determined by taxpayer's expert in using other methods. It is conceded by taxpayer that the actual value or market value of its property has been accurately determined.

With regard to all irrigated and dry cropland in Buffalo County, the situation is different. The county assessor accurately and faithfully followed the Land Manual and concluded that the value of all such cropland in Buffalo County was $219,504,741 (erroneously stated in the stipulation of facts as $219,540,741). Nowhere in the facts before this court is there any testimony that this amount is "actual value." From the county assessor's point of view this amount is the amount determined by the strict application of the Land Manual and is the amount to be used as assessed value. There is no other element used to calculate that number. We note that there are seven elements set out in Neb. Rev. Stat. § 77-112 (Reissue 1981) that may be used in a "formula" to determine actual value. In *Gradoville v. Board of Equalization*, 207 Neb. 615, 617, 301 N.W.2d 62, 64 (1981), we said, "The items set out by statute as examples of actual value, however, are not exclusive to all others. . . . ' "Many elements enter into a determination of actual value, some of which are set out in the statute." ' " Further, we stated in *Beynon Farm Products v. Bd. of Equalization*, 213 Neb. 815, 819, 331 N.W.2d 531, 534 (1983), "As we have said in the past, authorities charged with the duty of valuing property for taxation are not limited to just one method of determining value. They are required to use methods and to consider

such relevant factors as result in a proper assessment.''

In *Beynon Farm Products, supra,* the county assessor had used the Land Manual, and we held at 819, 331 N.W.2d at 534, ''In the absence of other evidence, proof that the guidelines provided by the Tax Commissioner were applied correctly raises a presumption that the assessment is legally proper.'' Following that settled law, there is a presumption in this case that the assessed valuation of all farmland was legally proper. In the present case, however, the evidence presented by the taxpayer goes beyond the guidelines followed by the county assessor.

The taxpayer's expert witness's stipulated testimony was that ''he has been a licensed real estate broker, practicing in Buffalo County, Nebraska for the past 25 years; that he has been a licensed real estate appraiser, practicing in Buffalo County, Nebraska for the past 8 years; that he is a member in good standing with the Buffalo County Board of Realtors (past President), Nebraska Realtors Association (past Vice President), National Association of Certified Appraisers (CA-S), and the Graduate Realtors Institute (GRI); that he is a certified VA appraiser, approved FHA appraiser, an approved F.N.M.A. appraiser, that during the last 5½ years he has prepared over 1,500 detailed real estate appraisals of both urban and rural real estate properties located in Buffalo County, Nebraska; that during the years 1980 and 1981 he prepared over 550 detailed appraisals of urban and rural property located in Buffalo County, Nebraska; that said appraisals for the years 1980 and 1981 were done for the purpose of determining the fair market value - actual value of each property so appraised by him; that the said appraisals for the years 1980 and 1981 included urban commercial and all land valuation groupings found under the Nebraska Agricultural Land Valuation Manual for irrigated and dryland cropland; that he has a working knowledge of the Marshall & Swift

Appraisal Manual valuation technique cost of reproduction less depreciation; that he is familiar with and understands the Nebraska Agricultural Land Valuation Manual valuation technique of capitalization of earnings based on yield production; that he has reviewed, studied and analyzed the land valuation grading values for irrigated and dryland cropland in the Nebraska Agricultural Land Valuation Manual that was used by the Buffalo County Assessor to reappraise the value of rural irrigated and dryland cropland for the year 1981; that he has reviewed, studied and analyzed the appraisal developed by the Buffalo County Assessor for the Kearney Holiday Inn using the Marshall & Swift Appraisal Manual . . . ."

The taxpayer's expert goes on to testify that, "in his opinion, based on his training, experience and review of his 1980-1981 appraisals of irrigated and dryland agricultural cropland properties in Buffalo County, including the use of comparative sales, the fair market value - actual value for all gradations of irrigated and dryland agricultural cropland for the year 1981 were uniformly undervalued by the Buffalo County Assessor by a multiplication factor of 2.25; that this uniform undervaluation results in irrigated and dryland agricultural cropland being uniformly valued at 44% of its actual value - fair market value."

That expert's valuation as to actual value of various kinds of farmland is set out in detail in his stipulated testimony. As an example, his valuation as to 1 acre of class 1A1 irrigated cropland is $2,700 per acre, as contrasted to $1,200 per acre under use of the Land Manual; and the expert's valuation of class 4D dry cropland was $371 per acre, as contrasted to $165 per acre under the Land Manual.

This expert's reasons for these differences were set out to be "That in his opinion, based on a review of comparative sales in Buffalo County for 1980 and 1981, the valuations contained in the Nebraska Agri-

cultural Land Valuation Manual for the year 1981 do not account for the impact of inflation on the fair market value - actual value of rural irrigated and dryland agricultural cropland." Combining that testimony with the agreed fact that the valuation of improvements was premised on 1981 dollars and that the valuation of cropland was based on 1976 dollars, and recognizing that there is no evidence of any attempt to correlate the different methods, we find that, as stated in *Konicek v. Board of Equalization*, 212 Neb. 648, 650, 324 N.W.2d 815, 816 (1982), "The discrepancy was not the result of an error of judgment but was a deliberate and intentional discrimination systematically applied throughout the county."

Article VIII, § 1, of the Nebraska Constitution provides, with exceptions not material to this case, that "[t]axes shall be levied by valuation uniformly and proportionately upon *all tangible property* . . . ." (Emphasis supplied.)

Following that constitutional command, the Nebraska Legislature has enacted Neb. Rev. Stat. § 77-201 (Reissue 1981), which provides, "All tangible property and real property in this state, not expressly exempt therefrom, shall be subject to taxation, and shall be valued at its actual value. Such actual value shall be taken and considered as the taxable value on which the levy shall be made."

"Actual value" has been held many times to mean exactly the same as market value or fair market value. See, *Beynon Farm Products v. Bd. of Equalization*, 213 Neb. 815, 331 N.W.2d 531 (1983); *Hastings Building Co. v. Board of Equalization*, 212 Neb. 847, 326 N.W.2d 670 (1982).

The situation presented, then, in this case is one in which it is agreed between the taxpayer and the County Board that the taxpayer's improved real property is assessed at its actual value calculated on a 1981 dollar cost of reproduction less depreciation, and in which there is no agreement between the same parties on the actual value of farmland in the

same county. The presumption raised by the county assessor's sole reliance on the state-furnished Land Manual has disappeared when taxpayer goes forward with its evidence which shows, without rebutting evidence, that when other relevant criteria are considered, the Land Manual, using 1976 dollars, has resulted in valuations not of "actual value" but of 44 percent of actual value.

The precise question in this case was foreshadowed in *Box Butte County v. State Board of Equalization & Assessment*, 206 Neb. 696, 713, 295 N.W.2d 670, 681 (1980), where the court stated, "Perhaps one further point deserves comment. The Department of Revenue, in presenting its evidence, made reference on several occasions to the assumption that there existed in the state good intracounty equalization, as a justification for its recommendation of the use of different tools in attempting to achieve statewide equalization. It is not entirely clear from the record whether the reference was to all classes of property, agricultural and nonagricultural alike, or only to and within the class of nonagricultural alone. If it was in regard to all property, it was an invalid assumption and one discarded by the State Board because, very obviously, by authorizing different rates of increases to the two main classifications of property, it recognized a lack of equalization."

That case considered the uniformity of valuation among all counties, but this court saw therein the problem of the equalization of different types of property *within* a county and held that by the utilization of "different rates of increases to the two main classifications of property, it [the state board] recognized a lack of equalization."

The question in this case was answered in *Konicek v. Board of Equalization, supra*, where farm real estate was valued in accordance with the Land Manual, and improvements to land were valued in accordance with a separate manual (the predecessor

to the Marshall and Swift manual used in this case) promulgated by the state Tax Commissioner. The result in the *Konicek* case was that farmland without improvements was valued at about 20 percent of actual value, while improvements were valued at approximately actual value. Therefore, in *Konicek*, when the values were combined to arrive at the valuation of improved farm real estate, such improved farm real estate was assessed at a higher percentage of actual value than unimproved farm real estate. In *Konicek, supra* at 650, 324 N.W.2d at 816, we stated, "The effect of the system of assessment used to value farm real estate was to create separate classifications of unimproved farmland and improved farmland with no correlation between the classifications. This method of assessment is not permissible under the constitutional requirement that all tangible property be valued uniformly and proportionately. Real property taxes may not be equalized by classifying property and then applying the same values to the same classifications of property. *County of Gage v. State Board of Equalization & Assessment*, 185 Neb. 749, 178 N.W.2d 759 (1970)."

In this case there is absolutely no correlation shown between the assessed values set for property classified as farmland and property classified as improved real estate. We reiterate that it is permissible to reasonably classify property for tax purposes and to use different methods to determine assessed values for different classifications of property. To comport with our Constitution's requirement that "[t]axes shall be levied by valuation uniformly and proportionately upon all tangible property," however, the results obtained by such permissible different methods must be in some way correlated so that the results reached shall be uniform and proportionate and shall not exceed actual value.

In *Grainger Brothers Co. v. Board of Equalization*, 180 Neb. 571, 582, 144 N.W.2d 161, 168-69 (1966), we stated, "Under the Constitution of Nebraska, Article

VIII, section 1, business inventories and real estate are in the same class for taxation purposes, and properties within the same class are required to be valued and assessed uniformly and proportionately in order that equalization obtain." We now state that dry cropland, irrigated cropland, and all real estate, whether improved or not, are all tangible property of the same class for taxation purposes, as defined in our Constitution; and while such properties may be appropriately classified into logical subclassifications and different appropriate methods of determining values of such subclassifications may be utilized, the answers obtained as to the values of the various subclassifications of property must be correlated so that *all* tangible property shall be assessed uniformly and proportionately.

The evidence in this case shows that that result has not been reached. The scope of our review is clear. As stated in *Grainger Brothers Co. v. Board of Equalization, supra* at 582, 144 N.W.2d at 169, " 'An appeal to the district court from action of the county board of equalization is heard as in equity, and upon appeal therefrom to this court it is tried de novo. . . .' " See, also, *Benyon Farm Products v. Bd. of Equalization*, 213 Neb. 815, 331 N.W.2d 531 (1983). On our review we hold that while the district court was correct in determining that the taxpayer's property was properly assessed at its actual value, the district court erred in determining that that value had not been "unjustly and unfairly assessed in proportion to values assigned to all other property."

Applying further that standard of review set out above, we find that the actual value of taxpayer's improved real property was properly determined to be $3,563,765. We further find that taxpayer's property was not assessed uniformly and proportionately with other property, to wit, farmland, which we find, under the evidence presented in this record, to be assessed at 44 percent of its actual value.

In that situation we follow the principle set out in *Sioux City Bridge v. Dakota County*, 260 U.S. 441, 446, 43 S. Ct. 190, 67 L. Ed. 340 (1923), and quoted with approval in *Konicek v. Board of Equalization*, 212 Neb. 648, 324 N.W.2d 815 (1982), "This Court holds that the right of the taxpayer whose property alone is taxed at 100 per cent. of its true value is to have his assessment reduced to the percentage of that value at which others are taxed even though this is a departure from the requirement of statute. The conclusion is based on the principle that where it is impossible to secure both the standards of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law."

We find that the assessment of taxpayer's property at its actual value should be reduced to 44 percent of that value to equalize the value of taxpayer's property with other property in Buffalo County, as required by the Constitution and statutes of the State of Nebraska.

We remand the case to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.