GORDMAN PROPERTIES COMPANY, FORMERLY KNOWN AS GORDMAN PARTNERSHIP, A PARTNERSHIP, ET AL., APPELLANTS, V. BOARD OF EQUALIZATION OF HALL COUNTY, NEBRASKA, ET AL., APPELLEES.

403 N.W.2d 366

Filed April 10, 1987.   No. 85-268.

James A. Beltzer of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, for appellants.

Michael P. Norris and Jerom E. Janulewicz, Deputy Hall County Attorneys, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Gordman Properties Company appeals dismissal of its petitions in the district court for Hall County after Gordman had presented evidence and rested its case in appeals from actions of the board of equalization of Hall County, which had approved an increase in the tax valuation of Gordman's real estate.

For purposes of taxation, on January 1, 1983, Gordman's real estate had an aggregate value of $1,762,500—$388,120 for land valuation and $1,374,380 for improvements. On April 20, 1983, Gordman filed its protest with the county board of equalization and alleged: "Current valuation of $1,762,500 is above actual Market. $1,200,000 represents the Fair Market Value of this property based on current appraisals." The board of equalization rejected Gordman's protest, and Gordman appealed to the district court. See Neb. Rev. Stat. § 77-1510 (Reissue 1981). In its "Petition on Appeal," Gordman claimed: "The value of [Gordman's] property has not been fairly and proportionally equalized with all of the property resulting in a discriminatory, unjust and unfair assessment," and "The assessment of said real estate is grossly excessive and is a result of arbitrary and unlawful action."

On January 1, 1984, the tax valuation of Gordman's real estate was the same as the 1983 valuation. This court, on January 27, 1984, issued *Kearney Convention Center v. Board of Equal.*, 216 Neb. 292, 344 N.W.2d 620 (1984), which contained the following syllabus item: "A taxpayer is entitled to have its property in a county assessed uniformly and proportionately with other property in the county even though the result may be that it is assessed at less than actual value." (Syllabus of the court.) Gordman filed its protest on April 27, 1984, concerning the same real estate involved in the 1983 protest and, among several allegations, claimed:

> 1. The protested valuation, as determined by the County Assessor, is in excess of "actual value" of the real estate and improvements, as defined by R.R.S. 77-112.
>
> . . . .
>
> 5. The protested valuation was determined by the County Assessor in a manner and amount which is unjust, disproportionate and unequal when compared with the actual value of other property within the county.
>
> . . . .
>
> 8. The fair market value of irrigated and dryland agricultural crop land for the year 1984 was uniformly under valued by the Hall County Assessor resulting in irrigated and dryland agricultural farmland being

uniformly valued at substantially less of its actual value - fair market value.

9. The application of different methods for determining the values of agricultural land and all building improvements resulted in an assessment which was not uniform and proportionate.

When the county board of equalization rejected the 1984 protest, Gordman appealed to the district court and alleged that the 1984 tax valuation was in excess of the actual value of Gordman's real estate and was unjust, disproportionate, and unequal when compared with the actual value of other property within the county, resulting "in an assessment which was not uniform and proportionate."

At the pretrial conference for the combined appeals by Gordman, the district judge determined the following:

Ultimate facts in dispute: 1. Whether value of agricultural land for '83 & '84 in Hall County was uniformely [sic] undervalued.

2. Whether plaintiff Richard-Gordman [sic] was valued in excess of its actual value. 1983 equalization not presented to board.

Points of law to be passed upon by the Court: 1. Whether Kearney convention case ruling applies in this case.

As its witness, Gordman called Larrilyn Crow, an employee of the Hall County assessor's office, who testified that the Gordman property had been valued at $1,762,500 for 1983 and 1984 in accordance with the Marshall-Swift method, as reflected in the manual bearing the same name. Crow also testified that Hall County used the 1980 Nebraska Agricultural Land Valuation Manual for valuation of agricultural real estate within Hall County.

Gordman called another witness, Donald McDannel, who is a real estate appraiser, consultant, a member of the American Institute of Real Estate Appraisers—a professional real estate appraisers' organization, and a member of the Counselors of Real Estate, an "invitation only" group of real estate consultants with a minimum of 5 years' experience. For 19 years McDannel had taught real estate appraisal courses for the

American Institute of Real Estate Appraisers, had coauthored a book on the appraisal of rural properties, and had done appraisal work since 1958, some in Hall County. Gordman retained McDannel to search the records of the Hall County register of deeds' office for arm's-length sales of agricultural land in Hall County and thereby determine a ratio between the assessed value of real estate and the sale price for such land. McDannel used the county's assessed value and considered the sale price of the property to be its actual value on the date of sale. For the 1983 sales-assessment ratio, McDannel utilized sales occurring in 1982 and sales in 1983 for the 1984 ratio to be determined. McDannel excluded several transfers for various reasons, including the appearance of acreage sales, interfamily transactions, less than fee interest transfers, old contracts for deeds, and sales for uses other than farming.

To arrive at a 1983 sales-assessment ratio, McDannel located 153 transfers of rural property, as reflected in the office of the register of deeds and, after analyzing those transfers, determined that 25 were arm's-length transfers which indicated actual value of the property. Concerning the 1983 tax valuation, McDannel testified that the assessed value of agricultural land ranged from 37.3 percent to 51.6 percent of its actual value. Based upon his research, McDannel expressed his opinion that, on January 1, 1983, agricultural real estate in Hall County was valued for tax purposes at 42.15 percent of its actual value. Regarding a 1984 ratio, McDannel considered 189 real estate transfers and determined that 33 were arm's-length transactions indicative of the actual value of the land sold. The sales-assessment ratio ranged from 46 percent to 56 percent, and in McDannel's opinion, for 1984, agricultural real estate in Hall County was valued for tax purposes at 49 percent of its actual value.

When Gordman had concluded presentation of evidence in its case in chief and rested, the board of equalization moved for dismissal, asserting that Gordman had failed to sustain the burden of proof placed upon a taxpayer in an appeal from action by a board of equalization. The court found that Gordman failed to present the issue of equalization as a part of its 1983 protest, but such absence of that issue before the board

of equalization did not preclude the district court's deciding the equalization issue in Gordman's appeal from the board's action regarding the 1983 assessment. The court then dismissed Gordman's petitions, finding that Gordman had failed to establish that its real estate "was not uniformly and proportionately valued with agricultural property in Hall County for the assessment years 1983 and 1984."

In its appeal to this court, Gordman does not question any determination of actual value. Rather, Gordman contends only that the district court erred in dismissing Gordman's petitions, since Gordman had presented a prima facie case that Hall County's tax valuations for farmland in 1983 and 1984 were not uniform and proportionate in relation to the tax valuation for Gordman's real estate in those years. The board of equalization counters that not only did Gordman fail to prove a prima facie case, as determined by the district court, but Gordman had failed to raise the issue of equalization in its 1983 protest and, therefore, the court was without power to resolve such question about equalization.

Neb. Const. art. VIII, § 1, states: "Taxes shall be levied by valuation uniformly and proportionately upon all tangible property . . . ."

Neb. Rev. Stat. § 77-1511 (Reissue 1986) states in part: "The district court shall hear appeals and cross appeals taken under section 77-1510 as in equity and without a jury, and determine anew all questions raised before the county board of equalization which relate to the liability of the property to assessment, or the amount thereof."

Referring to a statutory predecessor substantially the same as the current § 77-1511, this court observed in *Reimers v. Merrick County*, 82 Neb 639, 640, 118 N.W. 113, 114 (1908): "The legislature, in the section of the revenue law referred to, has seen fit to restrict the district court on such appeal to a consideration of the questions raised before said board, and the court is without power to adjudicate any other issue in that proceeding." See, also, *State Bank v. Seward County*, 95 Neb. 665, 146 N.W. 1046 (1914); *Brown v. Douglas County*, 98 Neb. 299, 152 N.W. 545 (1915).

This court has advanced two explanations or reasons for the

restriction on issues or questions which can be tried in the district court in a taxpayer's appeal from action of a county board of equalization.

In *Reichenbach Land & Loan Co. v. Butler County*, 105 Neb. 209, 211, 179 N.W. 1015, 1016 (1920), this court noted:

> The local board had ample power in the first instance to correct any error in the official action of the assessor, and the question for review should have been pointed out in some form. In considering the interests of the taxpayers of an entire county and of the public at large, in examining numerous items and in determining the value of property in different forms for the purpose of taxation, the county board of equalization is entitled to a specific complaint, and should have an opportunity to pass on the question for ultimate decision before the public revenues become involved in protracted or vexatious litigation. On appeal to the district court the questions for review are limited to the questions presented to the county board of equalization. This is the public policy of the state. [Citations omitted.]

The district court's restricted scope of inquiry in a taxpayer's appeal from action by a board of equalization was also discussed in *Nebraska Telephone Co. v. Hall County*, 75 Neb. 405, 407, 106 N.W. 471 (1906), where this court stated:

> [T]he reason for the limitation is obvious. If a taxpayer could present a question to the board which was without merit, and, after a determination of that question against him, could appeal to the district court and there present another and different question, a meritorious one, which required a different ruling, he could always overturn the assessment, and thus escape taxation of his property altogether.

Although Gordman, by its petition in district court, claimed there was a lack of uniform and proportionate valuation for 1983, such question about absence of uniformity and proportionality was never placed before the board of equalization by Gordman's 1983 protest. Without the issue of uniformity and proportionality of valuation presented to the board of equalization, the district court was without power to

adjudicate such question, in view of the provisions of § 77-1511. See; *Reimers v. Merrick County, supra; State Bank v. Seward County, supra; Brown v. Douglas County, supra.* While the district court, in its pretrial order, with acquiescence of Gordman and the board of equalization, designated uniformity and proportionality of a valuation as an issue, the district court did not acquire, and the parties were unable to supply, the judicial capacity or power to litigate a factual question or issue not presented to the board of equalization. Regarding the assessed valuation for 1983, the district court dismissed Gordman's petition on the ground that a prima facie case had not been established. However, dismissal of Gordman's petition was correct because, under the circumstances present in this case, the district court did not have the power to entertain any question about uniformity and proportionality of valuation for the 1983 assessment, and not because a prima facie case had not been established. As we expressed in *Travelers Indemnity Co. v. Heim*, 223 Neb. 75, 80, 388 N.W.2d 106, 110 (1986): "A correct result will not be reversed merely because a trial court reached that correct result for an incorrect reason." See *Gall v. Great Western Sugar Co.*, 219 Neb. 354, 363 N.W.2d 373 (1985).

In *Hastings Building Co. v. Board of Equalization*, 212 Neb. 847, 850-51, 326 N.W.2d 670, 672 (1982), this court stated:

> [T]he taxpayer has the burden of proving that the value of his property has been arbitrarily or unlawfully fixed by the board of equalization in an amount greater than its actual value, *or* that its value has not been fairly and proportionately equalized with all other property, resulting in a discriminatory, unjust, and unfair assessment.

" 'Equalization of assessments has for its general purpose to bring the assessment of different parts of a taxing district to the same relative standard, so that no one of the parts may be compelled to pay a disproportionate part of the tax. . . .' " *Hacker v. Howe*, 72 Neb. 385, 393, 101 N.W. 255, 258 (1904).

Consequently, in a proceeding before a county board of equalization, a taxpayer may raise questions concerning the assessed value (actual value) of the taxpayer's real estate, the

lack of proportionate and uniform valuation regarding the taxpayer's property, or both such aspects of valuation for tax purposes.

As this court expressed in *Carpenter v. State Board of Equalization & Assessment*, 178 Neb. 611, 619, 134 N.W.2d 272, 278 (1965): "[T]he object of the law of uniformity is accomplished if all of the property within the taxing jurisdiction is assessed at a uniform standard of value." (Emphasis omitted.)

"The rule of uniformity applies to both the rate of taxation and the valuation of property for tax-raising purposes." *Grainger Brothers Co. v. Board of Equalization*, 180 Neb. 571, 574, 144 N.W.2d 161, 164 (1966).

Concerning the 1984 assessment, the district court found, as a matter of law at the conclusion of Gordman's case in chief, that Gordman had failed to establish that its property was not uniformly and proportionately valued with agricultural land in Hall County. When a trial court sustains a motion to dismiss at the close of a plaintiff's case in chief, the Supreme Court must treat as admitted the truth of all relevant evidence favorable to the plaintiff and must give the plaintiff the benefit of all permissible inferences deducible from the properly admitted evidence to determine whether a prima facie case has been established. See *First Nat. Bank & Trust Co. v. Hughes*, 214 Neb. 42, 332 N.W.2d 674 (1983).

An appeal from action by a county board of equalization is an equity action tried de novo in the district court. See § 77-1511. See, also, *Kearney Convention Center v. Board of Equal.*, 216 Neb. 292, 344 N.W.2d 620 (1984); *Grainger Brothers Co. v. Board of Equalization, supra.* On appeal to the Supreme Court, an equity case involving action by a county board of equalization is a trial of factual questions de novo on the record, requiring the Supreme Court to reach a conclusion independent of the findings of the trial court. See, *Kearney Convention Center v. Board of Equal., supra; Grainger Brothers Co. v. Board of Equalization, supra; Beynon Farm Products v. Bd. of Equalization*, 213 Neb. 815, 331 N.W.2d 531 (1983).

In a taxpayer's appeal from action of a county board of

equalization, the burden is on the taxpayer to prove the contention that the value of the taxpayer's property has not been fairly and proportionately equalized with all other property, resulting in a discriminatory, unjust, and unfair assessment. *Hastings Building Co. v. Board of Equalization*, 190 Neb. 63, 206 N.W.2d 338 (1973); *Lincoln Tel. & Tel. Co. v. County Board of Equalization*, 209 Neb. 465, 308 N.W.2d 515 (1981).

In *Hastings Building Co. v. Board of Equalization*, 212 Neb. 847, 851, 326 N.W.2d 670, 672 (1982), we stated:

> There is a *presumption* that a board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action, which presumption remains until there is competent evidence to the contrary. Such presumption disappears when there is competent evidence on appeal to the contrary, and from that point on the reasonableness of the valuation fixed by the board of equalization becomes one of fact based upon the evidence, with the burden of showing such valuation to be unreasonable resting upon the appellant on appeal from the action of the board.

(Emphasis supplied.) See, also, *Kearney Convention Center v. Board of Equal., supra; Richman Gordman v. Board of Equalization*, 214 Neb. 470, 334 N.W.2d 447 (1983).

As expressed in McCormick on Evidence § 343 at 969 (E. Cleary 3d ed. 1984):

> Most presumptions have come into existence primarily because the judges have believed that proof of fact B renders the inference of the existence of fact A so probable that it is sensible and timesaving to assume the truth of fact A until the adversary disproves it.
>
> Obviously, most presumptions . . . have been created for a combination of reasons. Usually, for example, a presumption is based not only upon the judicial estimate of the probabilities but also upon the difficulties inherent in proving that the more probable event in fact occurred. Moreover, as is the case with initial allocations of the burdens, the reasons for creation of presumptions are

often tied closely to the pertinent substantive law. This is particularly true with regard to those presumptions which are created, at least in part, to further some social policy.

McCormick then indicates several "presumptions" and the reasons underlying their creation, such as: "Official actions by public officers, including judicial proceedings, are presumed to have been regularly and legally performed. Reason: probability and the difficulty of proving that the officer conducted himself in a manner that was in all ways regular and legal." *Id.*

While we have used the word *presumption* in reference to propriety of action by a board of equalization, what we have characterized as a presumption is, perhaps, more appropriately classified as a principle of procedure involving the burden of proof, namely, a taxpayer has the burden to prove that action by a board of equalization fixing or determining valuation of real estate for tax purposes is unauthorized by or contrary to constitutional or statutory provisions governing taxation. Cf. *McGowan v. McGowan*, 197 Neb. 596, 250 N.W.2d 234 (1977) (various presumptions and their nature). Cf., also, *Anderson v. Claussen*, 200 Neb. 74, 262 N.W.2d 438 (1978) (presumption and the risk of nonpersuasion). See Fenner, *About Presumptions in Civil Actions*, 17 Creighton L. Rev. 307 (1984).

In *Kearney Convention Center v. Board of Equal.*, 216 Neb. 292, 344 N.W.2d 620 (1984), we addressed the same issue with which we are faced in this case. There, the taxpayer contended that Buffalo County's use of two dissimilar methods of appraisal, the Nebraska Agricultural Land Valuation Manual and the Marshall-Swift manual, resulted in " 'blatant disparity in actual value between urban and agricultural real estate . . . .' " *Id.* at 293, 344 N.W.2d at 621. As in this case, the taxpayer in *Kearney Convention Center* introduced testimony of an expert witness that agricultural land was uniformly undervalued, at 44 percent of its actual value in that case. We stated in *Kearney Convention Center* that

> dry cropland, irrigated cropland, and all real estate, whether improved or not, are all tangible property of the same class for taxation purposes, as defined in our Constitution; and while such properties may be

appropriately classified into logical subclassifications and different appropriate methods of determining values of such subclassifications may be utilized, the answers obtained as to the values of the various subclassifications of property must be correlated so that *all* tangible property shall be assessed uniformly and proportionately.

The evidence in this case shows that that result has not been reached.

*Id.* at 303, 344 N.W.2d at 625-26. In *Kearney Convention Center*, we then held that the assessment of the taxpayer's property should be reduced to 44 percent of its actual value to equalize the value of the taxpayer's property with other property in Buffalo County.

Gordman offered the testimony of Donald McDannel, an expert witness, who expressed his opinion that, for the year 1984, Hall County had used a tax valuation for agricultural land at 49 percent of the agricultural land's actual value. However, although not required to do so by the Nebraska Evidence Rules, McDannel testified about the facts and factors entering into his opinion. See Neb. Evid. R. 705: "The expert may testify in terms of opinion or inference and give reasons therefor without prior disclosure of the underlying facts or data, unless the judge requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination." Neb. Rev. Stat. § 27-705 (Reissue 1985). Through McDannel's testimony about the tax valuation of agricultural land, Gordman established a prima facie case that the valuations for agricultural land and Gordman's real estate were not uniform and proportionate in 1984, as required by Neb. Const. art. VIII, § 1.

Therefore, we affirm the district court's judgment concerning the 1983 assessment of Gordman's real estate, but we reverse the district court's judgment regarding Gordman's appeal from the 1984 assessment and remand this matter to the district court for a new trial.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTION.