EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, DOING BUSINESS AS THE MALL SHOPPING CENTER, APPELLEE, V. LINCOLN COUNTY BOARD OF EQUALIZATION, APPELLANT.

425 N.W.2d 320

Filed July 1, 1988. No. 86-403.

Douglas J. Peterson, Deputy Lincoln County Attorney, for appellant.

Norman H. Wright, of Fraser, Stryker, Veach, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

The Lincoln County District Court reduced the 1984 assessment on plaintiff-appellee's commercial property from nearly 100 to 45 percent of actual value, thereby equalizing it with agricultural land assessments. The defendant, Lincoln County Board of Equalization (The Board), appealed. We affirm.

The plaintiff-appellee, Equitable Life Assurance Society of the United States, doing business as The Mall Shopping Center (The Mall), owned and operated a retail shopping mall in North Platte, Lincoln County, Nebraska, at all times relevant herein. The Lincoln County assessor found the actual and assessed value of The Mall's property for 1984 ad valorem tax purposes to be $5,940,340. The Mall appealed to The Board. One of the reasons cited for the appeal was that the assessment on The Mall's real estate was not equalized with other real property in the county, particularly agricultural land.

The Board found that The Mall's property was valued the same as similar property in the county and affirmed the assessor's assessment. The Mall appealed to the Lincoln County District Court, listing a number of reasons why its assessment should be reduced, including the lack of equalization with agricultural land.

There was, and continues to be, no dispute as to the actual value of The Mall's property per se. The appellee's appraiser fixed the fair market value of The Mall's property as of January 1, 1984, at $6 million, compared to the assessor's fair market value of $5,940,340.

A taxpayer is entitled to have its property in a county assessed uniformly and proportionately with other property in the county even though the result may be that it is assessed at less than actual value. See, *Fremont Plaza v. Dodge County Bd. of Equal.*, 225 Neb. 303, 405 N.W.2d 555 (1987); *Kearney Convention Center v. Board of Equal.*, 216 Neb. 292, 344

N.W.2d 620 (1984). "Actual value" has been held many times to mean exactly the same as "market value" or "fair market value." *Kearney Convention Center, supra*; *Beynon Farm Products v. Bd. of Equalization*, 213 Neb. 815, 331 N.W.2d 531 (1983).

In The Mall case, the principal issue tried in the district court was the level of uniformity of assessments between commercial and agricultural properties. Basically, The Board's appeal to this court claims that The Mall's evidence regarding uniformity of assessments between commercial and agricultural lands is insufficient to afford The Mall any relief.

In apparent recognition of the reality that governmental costs not shared by one group of taxpayers must necessarily be shifted to and be borne by the remaining taxpayers, Neb. Const. art. VIII, § 1, provides in relevant part, as it did at the pertinent time, that except for motor vehicles, "[t]axes shall be levied by valuation uniformly and proportionately upon all tangible property."

From a review of equalization cases decided by this court, it becomes abundantly clear that where it becomes necessary to lower the assessed value of a large commercial property to equalize it with agricultural land, it is the homeowner and the owner of smaller commercial property who bear a disproportionate tax. As will be seen later in this opinion, the cost of appealing a disproportionate assessment is prohibitive for the homeowner and owner of smaller commercial property. They will continue to suffer until the inequity is addressed by county boards of equalization or the Legislature.

An appeal from a county board of equalization is tried by the district court de novo as in equity and considered by this court de novo on the record made in the district court. See, *Spencer Holiday House v. County Bd. of Equal.*, 220 Neb. 607, 371 N.W.2d 286 (1985); *Kearney Convention Center v. Board of Equal., supra*. We are therefore obligated to weigh the evidence.

To successfully overturn a county board of equalization decision on the basis of lack of equalization, a taxpayer must prove that the assessed value of the taxpayer's property has not been fairly and proportionately equalized with all other

property, resulting in a discriminatory, unjust, and unfair assessment. There is a presumption that a board of equalization has faithfully performed its official duties in making an assessment and that it has acted upon sufficient evidence to justify its action. This presumption remains until there is sufficient evidence to the contrary. At that point the reasonableness of the valuation becomes a question of fact. The burden of showing the valuation to be unreasonable rests upon the taxpayer. *Chief Indus. v. Hamilton Cty. Bd. of Equal.*, 228 Neb. 275, 422 N.W.2d 324 (1988); *Fremont Plaza v. Dodge County Bd. of Equal., supra*; *Gordman Properties Co. v. Board of Equal.*, 225 Neb. 169, 403 N.W.2d 366 (1987).

To prove nonuniform and disproportionate treatment, The Mall relies upon two sales-assessment ratio studies. The first study was prepared by The Mall's own experts, who testified at trial. The second study was developed by the State Tax Commissioner, pursuant to Neb. Rev. Stat. § 77-508.01 (Reissue 1986).

Since at least 1966, this court has held that it is proper in equalization cases to rely upon sales-assessment ratio studies if they are based upon arm's-length transactions. See, *County of Kimball v. State Board of Equalization & Assessment*, 180 Neb. 482, 143 N.W.2d 893 (1966); *County of Loup v. State Board of Equalization & Assessment*, 180 Neb. 478, 143 N.W.2d 890 (1966); *Gordman Properties, supra*; *Fremont Plaza, supra*; *Chief Indus., supra*.

*Kearney Convention Center v. Board of Equal.*, 216 Neb. 292, 344 N.W.2d 620 (1984), predictably held on a stipulated record that it is constitutionally impermissible to tax commercial property at 100 percent of its actual value while agricultural property was being taxed at 44 percent of its actual value. In so holding, *Kearney Convention Center* reiterated that while it is permissible to reasonably classify property for tax purposes and to use different methods to arrive at the assessed values for each class of property, the results obtained by such varying methods must correlate to each other in such a manner that taxation of all the classes shall be uniform and proportionate and not exceed actual value. This constitutional principle was recently explained once again in *Banner County*

*v. State Bd. of Equal.*, 226 Neb. 236, 411 N.W.2d 35 (1987), during the course of analyzing a partial amendment to Neb. Const. art. VIII, § 1, adopted after the pertinent time in this case.

In The Mall case, statements from Lincoln County Assessor Bernadine Meyer's deposition which were received in evidence show that the Nebraska Agricultural Land Valuation Manual was utilized for valuing agricultural property in Lincoln County. The Lincoln County abstract for 1984 assessments was also entered into evidence.

The Mall introduced its sales-assessment ratio study through the testimony of its appraiser, William Fisher, and Dr. Gary Hoeltke, an officer and researcher with Selection Research, Inc., of Lincoln, Nebraska. Fisher collected data on agricultural sales in Lincoln County from April of 1983 through approximately September of 1984. He reviewed the data to find sale transactions evidencing fair market value sales. Fifty-three sales were determined to be at arm's length and representative of the varying soil types and agricultural properties in Lincoln County. This data was given to Dr. Hoeltke, who analyzed it and concluded that Lincoln County agricultural land was assessed at between 37 and 47 percent of fair market value for 1984.

Dennis Donner, manager of the technical services section of the Nebraska Department of Revenue, was called by The Mall to testify. He testified that he is responsible for the preparation of the department's own sales-assessment ratio study. He said that the Nebraska Agricultural Land Manual prepared by the department was used to value agricultural land statewide. He further testified that the Department of Revenue's Lincoln County sales-assessment ratio study, based upon 21 sales, showed that agricultural land was assessed at 39.94 percent of its sale price. The 21 sales were selected by the Lincoln County assessor. Donner declared that the 21-sale sampling "is very adequate to say that the non-sold properties would be valued in the same relationship to the sold properties and that the non-sold properties would sell approximately at the same range as the sold properties."

The Board presented testimony of Dr. James Scott, an expert

statistician, and Frank Frost, an appraiser and former Nebraska Department of Revenue employee.

Dr. Scott disagreed with the analytical methods used by Dr. Hoeltke and opined that Dr. Hoeltke's conclusions were not statistically reliable. Dr. Scott also questioned the data used to make the Department of Revenue's sales-assessment ratio. He believed that the data did not satisfy foundational assumptions necessary for inferential statistics and that it was inappropriate to make any inferences from such data.

Dr. Scott indicated that the only statistically reliable way to obtain data for a sales-assessment ratio would be to perform appraisals on at least 10 properties within Lincoln County. Two or three appraisals of each property would be needed to assure accuracy. Dr. Scott admitted that these appraisals would cost between $500 and $1,000 each.

Frost generally testified that purchasers of land in Lincoln County already owned other farm tracts. The sales samples utilized in The Mall's and state's ratio studies were not sales of large tracts, the average sale parcel being 419 acres. Frost concluded that the average Lincoln County farm was 1,400 to 1,600 acres. In his opinion this difference resulted in a false indication of value because higher prices could be obtained for smaller parcels. On cross-examination Frost admitted that large farms are commonly sold in smaller parcels to obtain the maximum total sales price.

In its argument before this court, The Board admitted that its experts could not find any sales of large farms in Lincoln County during 1983 and 1984. The record is devoid as to the last time a 1,400- to 1,600-acre farm was sold as a unit.

The Board presented no sales-assessment ratio studies to support its experts' theories. The district court found that The Board had breached its duty to equalize and had systematically valued agricultural land at 45 percent of its actual value for 1984 while assessing The Mall's property at nearly 100 percent of actual value. We agree. The court properly reduced The Mall's property's assessed value to $2,673,153.

The Board's arguments in support of its first assignment of error, that the *Kearney Convention Center v. Board of Equal.*, 216 Neb. 292, 344 N.W.2d 620 (1984), decision is not

controlling, are not persuasive. The Board correctly points out that in the *Kearney* case, the evidence was stipulated; that there was no evidence rebutting the taxpayer's position; that the statistical reliability of the sales-assessment ratio study was not challenged; and that there was no issue as to whether the sizes of the parcels of land sold were representative of sales in Kearney County.

The Board's arguments that the rulings in *Kearney* are not controlling miss the target. The rules of law set forth in *Kearney* that the Nebraska Constitution requires that taxes must be levied by valuation uniformly and proportionately on all tangible property and that a taxpayer is entitled to have its property in a county assessed uniformly and proportionately with other property in the county even though the result may be that it is assessed at less than actual value *are* controlling in this case.

The Board also contends that *Kearney* is not controlling because there the evidence was stipulated, while in this case, The Board introduced evidence to rebut The Mall's evidence. That contention is totally destroyed in *Fremont Plaza v. Dodge County Bd. of Equal.*, 225 Neb. 303, 312, 405 N.W.2d 555, 561 (1987), where we held:

> The county presented evidence to rebut the independent studies undertaken by the taxpayer's experts, but did not satisfactorily refute the appraiser's testimony. The county attacked the statistical reliability of the taxpayer's study; yet, the results of those studies were consistent with the results obtained in the appraiser's independent studies and the state's study.

Just as in *Fremont Plaza*, the county board of equalization's evidence in this case does not satisfactorily refute the sales-assessment ratio or the nonuniform and disproportionate assessment established by The Mall.

The Mall's case is significantly similar to the *Fremont Plaza* case. The litigants in both cases utilized the testimony of the same expert witnesses. The county board of equalization in each case attacked the statistical reliability of the taxpayer's sales-assessment ratio study. In both cases, the ratio studies were consistent with the studies of the state Department of

Revenue studies, which were based upon data supplied by the respective county assessors. In both cases, the taxpayers' and the Department of Revenue's studies concluded that assessed values of the taxpayers' commercial properties were systematically assessed at a nonuniform and disproportionate rate when compared with agricultural land. In both cases, this resulted in discriminatory, unjust, and unfair assessments of the taxpayers' properties.

In *Fremont Plaza*, based upon the evidence, we approved the methodology used by the taxpayer's experts and Nebraska's revenue department in determining a sales-assessment ratio of commercial and agricultural property. We also found, based upon the evidence, that the studies produced statistically reliable results. The same is true here; the evidence shows the methodology used by The Mall's experts and the Nebraska Department of Revenue produced statistically reliable results.

After reviewing all of The Board's assignments of error, we find that none of them have merit.

Based upon a de novo review of the record, the judgment of the trial court is affirmed.

AFFIRMED.