IDEAL BASIC INDUSTRIES, INC., APPELLANT, V. NUCKOLLS COUNTY
BOARD OF EQUALIZATION, APPELLEE.
437 N.W.2d 501

Filed March 31, 1989.    No. 87-762.

Donn E. Davis and Rocky C. Weber, of Crosby, Guenzel, Davis, Kessner & Kuester, for appellant.

Timothy S. Schmidt, Nuckolls County Attorney, for appellee.

BOSLAUGH, SHANAHAN, and GRANT, JJ., and KNAPP and ROWLANDS, D. JJ.

GRANT, J.

This is an appeal from the Nuckolls County District Court's review of a tax valuation made by the Nuckolls County assessor (Assessor) and affirmed by the Nuckolls County Board of Equalization (Board).

Ideal Basic Industries, Inc. (Ideal), plaintiff-appellant, is a foreign corporation which operated a cement plant near

Superior. For the 1985 tax year the Assessor issued a real estate tax valuation statement fixing the value of Ideal's plant at $5,499,640.

On April 30, 1986, Ideal filed a property valuation protest with the Nuckolls County clerk. On May 30, 1986, Ideal's protest was heard before the Board. At this hearing Ideal presented evidence tending to show that the cement plant's actual value was $1,200,000. The Assessor did not present any evidence to the Board in support of his valuation, but did take issue with Ideal's $1,200,000 valuation.

On May 30, 1986, the Board recommended that the property value be maintained at $5,499,640. In support of its recommendation the Board stated: "[T]he requested $1,200,000 valuation was unacceptable and . . . the testimony and evidence presented by the representatives for Ideal . . . did not warrant a change."

Pursuant to Neb. Rev. Stat. § 77-1510 (Reissue 1981), Ideal appealed the Board's decision to the Nuckolls County District Court, and requested that the district court fix the 1985 tax value of the plant at $2,100,000. On April 30, 1987, the matter was tried de novo before the district court, and in an order filed August 6, 1987, the district court found the value of Ideal's plant to be $4,600,000.

Ideal appeals to this court and assigns as error the actions of the district court (1) in establishing a value unsupported by the record and failing to consider the evidence offered by Ideal and (2) in establishing the value of Ideal's plant at $4,600,000.

An appeal from a county board of equalization, both to the district court and to this court, is heard de novo on the record as an equity proceeding. In its review, this court must reach a conclusion independent of the findings of the trial court. *Gordman Properties Co. v. Board of Equal.*, 225 Neb. 169, 403 N.W.2d 366 (1987); *Kearney Convention Center v. Board of Equal.*, 216 Neb. 292, 344 N.W.2d 620 (1984).

There is a presumption that a board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action. That presumption remains until there is competent evidence to the contrary presented, and the presumption

disappears when there is competent evidence adduced on appeal to the contrary. From that point forward, the reasonableness of the valuation fixed by the board of equalization becomes one of fact based upon all the evidence presented. The burden of showing such valuation to be unreasonable rests upon the taxpayer on appeal from the action of the board. *Hastings Building Co. v. Board of Equalization*, 212 Neb. 847, 326 N.W.2d 670 (1982); *Richman Gordman v. Board of Equalization*, 215 Neb. 379, 338 N.W.2d 761 (1983).

During the trial, a registered engineer with 17 years of appraisal experience, including the appraisal of over 26 cement plants in the United States and Europe, testified on behalf of Ideal. This engineer testified that in completing his appraisal of the plant, he conducted a personal inspection. He considered the plant's age and condition, production levels and capacity, quality of cement produced, and production process; the plant's layout, size, and location; the plant's distance from raw materials; the competition in Nebraska and the area; the income-producing power of the plant; the remaining physical and economic life of the plant; and the plant's operating cost.

Testimony showed that production of cement began in 1913. The plant uses a wet process, as distinguished from the more efficient dry process used in all plants built since 1981. In the wet process the plant uses to produce Portland cement, limestone, cement rock, and shale are quarried, crushed, and transported by private railroad 3 miles to the plant. These raw materials are then crushed and mixed in mills. This material is then mixed with water in slurry tanks. The slurry is then fed into one of two kilns, where it is heated to 2700 °F. The chemical reaction driven by this heat results in a product called clinker. This clinker is then ground together with additives to make Portland cement. The dry process differs from the wet process in that the kiln temperature need only reach 1600 °F, since the raw materials are preheated before entering the kiln. The engineer testified that the dry process is much more energy efficient than the wet process and is also much less labor intensive.

The engineer determined that the kiln capacity of the Superior plant ranked 122d and its finish grinding plant ranked

112th out of 125 cement plants in this country, and concluded that the plant was one of the oldest and smallest operating cement plants in the United States.

Based on this information, three approaches were employed by this engineer in order to determine the actual value of Ideal's cement plant. This engineer went on to testify that using a fair market value approach the plant had a value of $2,174,000, using an income approach the plant had a value of $2,046,000, and using a market approach the plant had a value of $2,190,000. This engineer concluded that Ideal's cement plant had an actual market value of $2,100,000.

This testimony was sufficient to rebut the presumption of reasonableness recognized by this court in favor of an assessment made by a county board of equalization. Once the presumption in favor of a board of equalization has been successfully rebutted, the reasonableness of a board's valuation becomes a question of fact for this court to determine from the evidence in the record. *Otradovsky v. Board of Equalization*, 206 Neb. 559, 294 N.W.2d 334 (1980); *Richman Gordman v. Board of Equalization, supra.*

We must now determine the reasonableness of the Board's valuation in light of the evidence before us. The record shows that the county assessor was called as a witness by Ideal. He was not an appraiser and had never conducted an appraisal of Ideal's plant. The Assessor testified that Ideal's plant was last appraised by Nuckolls County in 1968; that he did not know what methodology had been employed during this appraisal; that he had used the 1968 appraisal in fixing the plant's 1985 tax value; and that he had not applied a depreciation factor in his valuation since 1975.

As we view the record, the only satisfactory evidence of the actual value of the plant in 1985 came from the testimony of the expert witness called by Ideal. We conclude that the judgment of the district court is not supported by the evidence and that the evidence supports a valuation of $2,100,000.

The judgment of the district court is reversed and the cause remanded, with directions to fix the actual value of the appellant's property in question for the 1985 tax year at $2,100,000.

REVERSED AND REMANDED WITH DIRECTIONS.