KAWASAKI MOTORS CORP., APPELLANT, V.
LANCASTER COUNTY BOARD OF EQUALIZATION, APPELLEE.
584 N.W. 2d 63

Filed September 15, 1998.   No. A-97-773.

Edward E. Embree II, of Neill, Scott, Terrill & Embree, L.L.C., for appellant.

Gary E. Lacey, Lancaster County Attorney, and Michael E. Thew for appellee.

HANNON, SIEVERS, and MUES, Judges.

HANNON, Judge.

Kawasaki Motors Corp. (Kawasaki) appeals the order of the Nebraska Tax Equalization and Review Commission (Commission) which upheld the valuation by the Lancaster County Board of Equalization (Board), for property tax purposes, of $13,916,455 for Kawasaki's manufacturing plant. The Commission found the evidence did not show the Board's action to be arbitrary and capricious and affirmed the Board's decision. We find the evidence shows the Board's action was arbitrary because the property was valued on the basis of a previous agreement, but since the Commission also effectively found the evidence showed the value set by the Board was not unreasonable, we affirm the order of the Commission.

## BACKGROUND

The Kawasaki facility is a large manufacturing plant located just northwest of the city of Lincoln in Lancaster County, Nebraska. The plant has between 910,000 and 924,395 square feet and is located on approximately 100 acres of land. The plant consists of three large industrial buildings which are connected, several smaller buildings which are also connected, and several freestanding industrial buildings.

Kawasaki appealed to the Commission after the Board adopted the assessor's value of $13,916,455. Kawasaki's reason for appealing was that "[m]arket value indication via the income approach and market data approach supports a value below the assessed value." Kawasaki requested a valuation of $8,475,000.

The hearing before the Commission was held on March 18, 1997. Kawasaki called Bernie Shaner, a licensed appraiser, to testify in support of his formal appraisal. The Board called Robin Hendricksen, also a licensed appraiser, to testify in support of his summary report, and John Layman, whose testimony was not received. The Commission received four exhibits, but we will describe and summarize only those facts relevant to this appeal.

Exhibit 1, offered by Kawasaki, is a real estate appraisal prepared by Shaner. In the appraisal, dated March 12, 1997, Shaner opines that the market value of the Kawasaki plant as of January 1, 1996, was $8,200,000. The appraisal is a multipage document containing photographs of the property and a separate section describing and analyzing the area, the site, the improvements, and the highest and best use of the property. In the appraisal, Shaner used only the sales comparison approach in analyzing the property. Shaner opined that neither a completed cost approach nor an income approach would be proper to use in this case. In his sales comparison approach, Shaner used price per square foot of gross building area as a "common denominator." Shaner compared the Kawasaki plant with "[s]ales of large industrial properties located throughout the midwest region."

Exhibit 2 is the "complete transcript of the records of the [Board] with respect to the protest and complaint of [Kawasaki]." Exclusive of notices, formal protests, et cetera, the exhibit contains the referee's report and the record of the Board's July 22 and 23, 1996, hearings at which the Board approved the referee's report.

The referee's report is a formal document prepared on a form and contains no information relevant to the value of the Kawasaki property except that in the section entitled "Action Taken by the Referee," boxes are checked which indicate that after inspecting the property, the referee agreed with the data, valuation premise, and final value estimated by the assessor's office and the referee determined that the data or information supplied by the owner was not conclusive and that therefore, no valuation change was recommended. The report contains a "Summary of Final Recommendations," in which the recommended total property value is $13,916,455 ($13,064,630 for improvements and $851,825 for land). The report is signed by Wayne Kubert as both referee and coordinator and dated July 15, 1996.

Exhibit 2 also contains the "Lancaster County Board of Equalization 1996 Rules and Procedures for Property Valuation Protests" and Kawasaki's "Property Valuation Protest." Kawasaki's protest states it was filed because "[t]he current

assessment is in excess of the market value. Comparable buildings in the region support a value below the one placed on this account."

Part of exhibit 2 is a three-page computer printout entitled "Lancaster County Commercial and Industrial Valuation," which contains rather cryptic information on the income approach, without explanation, and on the second page states, "Final Value for Parcel = $13,916,455 (Special Value)." Several computer printout sheets which must be intended to support the assessor's value follow the valuation. (No explanation of this cryptic information is provided by the exhibit or through testimony.) The printout also contains a narrative beginning September 7, 1992, which states some of the relevant characteristics of the property. Most significantly, this narrative contains information about the settlement of the dispute over the assessed value of the property for 1994 and 1995. The record relates that the dispute was settled in 1995 with a price per square foot value of $15.01, and with additional increases, that settlement was the basis of the assessor's value for 1996.

The computer printout continues for several pages and includes diagrams, descriptions of building dimensions, and other skeletal information and ends by showing a value of $13,916,455. Neither the document nor later testimony explains the significance of this information, and we thus find the information worthless. We note that the Commission also does not refer to such information in its analysis.

Exhibit 3 is Hendricksen's "limited scope summary report" of the Kawasaki plant. This report contains a cost approach summary and lists the total value of the plant at $16,700,000, adjusted for depreciation. The report also contains a comparable sales analysis, in which Hendricksen listed the comparables in terms of price per square foot. This report contains the usual information which is compiled and utilized to support an appraiser's opinion as contained in the report. The contents of the report were largely testified to by Hendricksen and therefore, will not be summarized here.

Shaner testified at the hearing before the Commission. He has been an appraiser since 1972, holds "the MAI designation from the appraisal institute" and is a certified appraiser in

Nebraska, Kansas, and Missouri. Shaner teaches appraisal courses and appraises all property except agricultural property. Shaner testified to explain and support his opinion and his appraisal which is contained in exhibit 1. The evidence shows Shaner is qualified as an appraiser and that his opinion is adequately supported. Under our standard of review, regardless of the outcome of this case, this court does not consider the adequacy of Shaner's testimony on value or compare it with the evidence that might be in opposition thereto. At most, we decide the adequacy of the evidence to support the value given to the facility by the Board and the Commission's action. For this reason, we are not summarizing Shaner's testimony or his opinion on value. We observe only that Shaner's appraisal is lower than the amount accepted by the Commission and of course could support any decision which might adopt it.

The Board called Hendricksen to testify. Since the adequacy of his testimony to support the Commission's decision is critical to the outcome of this appeal, we shall summarize it in considerable detail. Hendricksen testified that he is a licensed appraiser and has been the chief administrative deputy assessor for the Lancaster County assessor's office for the past 6 years. Kawasaki stipulated to his qualifications. Hendricksen was involved in the negotiation with Kawasaki which resulted in the value that was placed on the facility for 1994 and 1995. Hendricksen testified the 1996 value was based on the $15-per-square-foot value established for 1994 and 1995 by negotiation, with additional value for the new additions.

Hendricksen's report is "a summarial cost approach." Hendricksen testified that if he were going to do a complete cost approach, he would itemize each characteristic of the building individually; show the square footage of the area and square footage of site preparation; and actually go through, item by item, and allocate cost for each. Instead, Hendricksen prepared exhibit 3, which is a summary to see if the value established by the Board was reasonable. Hendricksen claims the correct square footage is 924,395. Hendricksen testified that he reconstructed the improvements using a replacement cost from the Marshall and Swift valuation service (M & S), and that he first computed the cost per square foot for vertical costs and

then "reduced that to a horizontal cost so I could apply it as a flat per square foot number in my recosting." Hendricksen used the M & S cost figures for an average quality building, but he testified his inspection showed the Kawasaki facility is in "average to good condition and like new." Hendricksen arrived at an average cost new per square foot of $25.09 and a total reproduction cost new of $26,964,914 for the facility.

To establish a percentage of physical depreciation, Hendricksen divided the building into areas according to the year of construction. Of the 924,000 square feet in the building, 241,000 feet were built since 1991. The percentage was based upon a life expectancy of 50 years, which he obtained from M & S. Since his inspection did not disclose a noticeable difference by annual increments, Hendricksen rounded the age up to the nearest 5-year increment and arrived at a reproduction cost new, less depreciation, of $16,031,309. This figure was reduced by "apparent or functional and external obsolescences." He testified that the only functional obsolescence he observed was the lack of a larger corridor for the movement of raw material from the main building to another building. Hendricksen did not find any external obsolescence, and he determined, by the use of M & S, the cost of curing the functional obsolescence problem to be $175,000. Hendricksen subtracted this figure from the reproduction cost new to result in a value for the improvements of $15,856,309. Adding the land value, Hendricksen arrived at $16,700,000 as the value of the facility by the cost approach.

Hendricksen disagreed with Shaner's opinion that the cost approach was not viable and cited the property assessment handbook, which provides that the cost approach is especially relevant for special use and industrial facilities. Hendricksen agreed that the cost approach would probably "tend to demonstrate the value — the upper end of value." Hendricksen testified the market approach was also strong. Hendricksen did not establish a value by the cost approach but gathered information from around the country regarding the market approach. Hendricksen prepared an array of 26 large property sales across the country, found a range of sale values from $4.07 to $32 per square foot, and opined the buildings in the array were inferior to and older than the Kawasaki facility.

Hendricksen testified that he did not intend to establish a value using the market approach but intended to show that the value established by the Board was reasonable. Hendricksen pointed to some sales in the array showing a value from $12.28 to $16.92 per square foot for buildings as large or larger than the Kawasaki facility, and this tends to support the Board's finding. The overall average of the sales was $14.69 per square foot, as compared to the $15 per square foot used by the Board.

Upon cross-examination, Hendricksen admitted he received the information about the sales from persons in the assessment and appraisal industry and that he did not verify them or adjust them. Hendricksen testified, "I haven't valued the property. The cost approach is included again simply to show that the valuation that was established by the Board of Equalization was not unreasonable. . . . The cost approach indicates that the upper limit of value might be $16,700,000." Hendricksen testified he would attempt to complete all three approaches if he were to appraise the property. Hendricksen testified that he agreed with Shaner that the income approach would be very difficult to substantiate for such a large property, that he thought the cost and sales approaches were of relative importance on this property, that he does not agree with Shaner's decision to not include the cost approach, that he disagreed with Shaner's opinion that the design or quality makes the Kawasaki facility inferior to the buildings in the sales array, and that he disputed Shaner's diagram of the main plant as showing the plant to be cluttered. Hendricksen opined that Shaner's attribution of a large amount of functional obsolescence was unfounded and that there was very little that would prevent the property from being converted into a distribution warehouse.

Hendricksen testified that the building permits in the assessor's office show that Kawasaki has spent $8.5 million dollars since 1989 to construct improvements on the property. Hendricksen opined that Kawasaki would not make such improvements on property that was functionally obsolete.

Hendricksen admitted that it was not his opinion that the value of the plant was $16,700,000. Instead, Hendricksen testified that "[t]he cost approach indicate[d] that the upper limit of value might be $16,700,000."

The Commission entered a several-page "Findings and Orders" (Order), which upheld the Board's determination of $851,855 for land and $13,064,600 for improvements, for a total value of $13,916,455. In the Order, the Commission discussed and considered the evidence presented. We will set forth the contents of the Order more fully when relevant.

## ASSIGNMENTS OF ERROR

Kawasaki first alleges that the Board's decision was arbitrary and capricious because (1) the Board failed to follow its own rules in that the referee and the referee coordinator were the same person; (2) no recording of the hearing with the referee was made; (3) the referee's report failed to provide the Board with findings and recommendations as required by statute; (4) the Board failed to consider all "papers," findings, and recommendations of the referee relating to the protest as required by statute; and (5) the Board failed to prepare a report containing the information required by statute.

The failure to follow the prescribed procedures is likely to result in a preserved record which contains less information to support a county board of equalization's decision at the Commission's hearing, and similarly, upon appeal to this court, the record is less likely to be adequate. To that extent, failure to follow the full procedure carries its own penalty. However, Neb. Rev. Stat. § 77-1511 (Reissue 1996) provides for a de novo hearing, and therefore, absent a specific claim of prejudice, after a hearing before the Commission the procedural error before the Board has no independent effect justifying a reversal on that ground alone. Furthermore, Kawasaki did not raise the issue before the Commission. More important, for other reasons we do decide that the action of the Board was arbitrary and capricious, and we need not make that determination twice. The first assignment of error therefore need not be discussed.

Kawasaki alleges that the Commission's decision failed to value the property as required by § 77-1511 and that the Commission erred in not finding that the Board's decision was arbitrary or capricious, as "there was no evidence presented or that exists anywhere in the record as to how the [Board] reached its decision."

## STANDARD OF REVIEW

Our review of a final decision of the Commission is for error on the record of the Commission. Neb. Rev. Stat. § 77-5019 (Reissue 1996); *Lancaster Cty. Bd. of Equal. v. Condev West, Inc.,* ante p. 319, 581 N.W.2d 452 (1998); *J.C. Penney Co. v. Lancaster Cty. Bd. of Equal.,* 6 Neb. App. 838, 578 N.W.2d 465 (1998). When reviewing an order for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Condev West, Inc., supra; J.C. Penney Co., supra.*

## ANALYSIS

*Standard of Review.*

As we have done in previous cases, we must discuss and consider the Commission's standard of review and the standard of review which the Commission used in the trial before it. See, *Condev West, Inc., supra; J.C. Penney Co., supra.* In its order, the Commission began its discussion of the standard of review with the same "boilerplate" language that was included in and commented on by this court in *Condev West, Inc., supra,* and *J.C. Penney Co., supra.* The Commission then added:

> [T]he Commission must affirm the decision of a county board of equalization unless that decision was determined by will or caprice or selected at random; or if the board's decision was made in disregard of facts and circumstances and without some basis which would lead a reasonable person to the same conclusion.

With this as the standard of review, the Commission concluded that "as a matter of law" the action of the Board should be affirmed. The Order cited *Ponderosa Ridge LLC v. Banner County,* 250 Neb. 944, 554 N.W.2d 151 (1996), which is a case involving water law and a review by a court of an action of a tribunal exercising legislative authority. We do not think that *Ponderosa Ridge LLC* is good authority for appeals from county boards of equalization, because such boards are established under a different statute for a purpose not related to any found in water litigation.

We are concerned that by applying the wrong standard of review the Commission has deprived Kawasaki of the hearing to

which it was entitled. The statutory basis for the standard of review of the Board's determination is as provided in § 77-1511:

> The [Commission] shall hear appeals . . . as in equity and without a jury and determine anew all questions raised before the county board of equalization which relate to the liability of the property to assessment, or the amount thereof. The [Commission] shall affirm the action taken by the board unless evidence is adduced establishing that the action of the board was unreasonable or arbitrary or unless evidence is adduced establishing that the property of the appellant is assessed too low.

See, *Condev West, Inc., supra*; *J.C. Penney Co., supra*.

■ Before the Commission was established by 1995 Neb. Laws, L.B. 490, the district court had the same standard of review as § 77-1511 now gives to the Commission. See § 77-1511 (Reissue 1990). Therefore, as noted by this court in *Condev West, Inc., supra*, and *J.C. Penney Co., supra*, principles applicable to district court reviews in equalization matters maintain viability even though the Commission has taken over the district court's role. Before the Commission existed, the Nebraska Supreme Court announced the rule, as quoted in *Condev West, Inc., supra*, that in determining whether to affirm the decision of a county board of equalization,

> "There is a presumption that a board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action. That presumption remains until there is competent evidence to the contrary presented, and the presumption disappears when there is competent evidence adduced on appeal to the contrary. From that point forward, the reasonableness of the valuation fixed by the board of equalization becomes one of fact based upon all the evidence presented. The burden of showing such valuation to be unreasonable rests upon the taxpayer on appeal from the action of the board."

*Lancaster Cty. Bd. of Equal. v. Condev West, Inc., ante* p. 319, 329, 581 N.W.2d 452, 459 (1998) (quoting *Ideal Basic Indus. v. Nuckolls Cty. Bd. of Equal.*, 231 Neb. 653, 437 N.W.2d 501 (1989)).

In rebutting the aforementioned presumption,

"the burden of persuasion imposed on the complaining taxpayer is not met by showing a mere difference of opinion unless it is established by clear and convincing evidence that the valuation placed upon his property when compared with valuations placed on other similar property is grossly excessive and is the result of a systematic exercise of intentional will or failure of plain duty, and not mere errors of judgment."

*Id.* at 330, 581 N.W.2d at 459-60 (quoting *Bumgarner v. County of Valley,* 208 Neb. 361, 303 N.W.2d 307 (1981)).

This standard, however, does not tell the Commission that it must affirm a board of equalization's decision unless it was determined by will or caprice or selected at random, although it is clear that a decision determined by will or caprice or at random would clearly be arbitrary and reversible under the proper standard. A board's decision made in disregard of facts and circumstances without some basis which would lead a reasonable person to the same conclusion would certainly be arbitrary. However, the above-quoted statute and the rules laid down by the Supreme Court do not establish such a harsh standard of review.

In one of its assignments of error, Kawasaki argues that the record contains no evidence showing how the Board reached its decision. We do not agree with that statement. The record shows, both by the county assessor's file and by Hendricksen's testimony, that the property was not appraised in any manner before the appeal to the Commission was initiated by Kawasaki. If the computer record of the county assessor's office contains a cryptic appraisal, the Board did not see fit to introduce evidence that the appraisal was explained to the Board or to the Commission so it could be relied upon in arriving at a value. The record clearly shows that the assessor valued the property on the basis of an agreement reached between the Board and Kawasaki in 1995 that settled litigation for tax years 1994 and 1995, but increased the valuation to reflect new construction. There is no evidence that that settlement was intended to include tax years after 1995. In the analysis portion of its order, the Commission found the Board's reliance on the previous agreement was wrong and not to be condoned. The Commission

noted in its decision that the agreement was given no weight. However, the Commission did not find that the Board's reliance upon that agreement made the Board's action arbitrary and capricious, which it clearly was, because at the time of its decision, the Board had only the agreement to support its value.

Because we have determined on the basis of undisputed evidence that the Board's method was arbitrary and capricious, it naturally follows that the Commission committed error on the record when it found otherwise. If the Commission had found that the Board had been arbitrary and capricious, the reasonableness of the valuation fixed by the Board would become a fact that would need to be determined based on all of the evidence presented. The Commission's announced standard of review tends to establish that it did not consider the reasonableness of the fixed value on the basis of all of the evidence. See, *Ideal Basic Indus. v. Nuckolls Cty. Bd. of Equal.*, 231 Neb. 653, 437 N.W.2d 501 (1989); *J.C. Penney Co. v. Lancaster Cty. Bd. of Equal.*, 6 Neb. App. 838, 578 N.W.2d 465 (1998). However, the entire Order, particularly that part under the heading of "Analysis," shows otherwise.

In its analysis, the Commission considered the evidence presented by both Kawasaki and the Board in detail, listed and discussed sales relied upon by both appraisers, discussed some sales that it felt significant, considered principles and notions of arriving at value by appraisement, and cited relevant authority on appraisement. Most of its findings were formal and uncontested facts, but the Commission did find that the comparables used by Kawasaki's expert tended to skew "the resultant estimate of valuation." We think the "Analysis" portion of the Order is more revealing of the exercise performed and the conclusions made than the "Findings of Fact" portion of the Order.

Based on our study of the Order, we conclude that the Commission did consider all of the evidence presented and determined the reasonableness of the valuation fixed by the Board on the basis of all the evidence and that it determined that value to be reasonable.

*Must Commission Make Specific Finding of Value?*

The Commission did not make a specific finding as to the value of the subject property, and Kawasaki contends that such

failure to "independently determine the value of the property in question" pursuant to § 77-1511 constitutes reversible error. Brief for appellant at 9. We can find no case which considers the question. It is true that § 77-1511 provides that the Commission shall determine anew all questions raised before the Board. However, the above-cited authority holds that the Commission should determine the reasonableness of the valuation fixed by the Board, which becomes a question of fact for the Commission. It seems clear that if the Commission determined the Board's value was reasonable, there is no need for further findings. The record supports this finding, and we therefore affirm the order of the Commission affirming the determination made by the Board.

AFFIRMED.